SLIP OPINION


# SUPREME COURT OF ARKANSAS

No. CV–13–756

PINE HILLS HEALTH AND
REHABILITATION, LLC; SLC
OPERATIONS, LLC; SLC
PROFESSIONALS OF ARKANSAS,
LLC N/K/A SLC PROFESSIONALS,
LLC; CAPITAL SENIORCARE
VENTURES, LLC; 900 MAGNOLIA
ROAD SW, LLC; SENIOR VANTAGE
POINT, LLC; SENIOR LIVING
COMMUNITIES OF ARKANSAS, LLC;
ADDIT, LLC; QUALITY REVIEW,
LLC; ARKANSAS SNF OPERATIONS
ACQUISITION, LLC; ARKANSAS
NURSING HOME ACQUISITION,
LLC; CSCV HOLDINGS, LLC;
CAPITAL FUNDING GROUP, INC.;
CAPITAL FUNDING, LLC D/B/A
CAPITAL FUNDING GROUP;
MICHAEL HUNTER, IN HIS
CAPACITY AS ADMINISTRATOR OF
PINE HILLS HEALTH AND
REHABILITATION, LLC; AND
PATRICIA BULLARD, IN HER
CAPACITY AS ADMINISTRATOR OF
PINE HILLS HEALTH AND
REHABILITATION, LLC

                                    APPELLANTS


V.


RUFUS BRIAN MATTHEWS, AS
SPECIAL ADMINISTRATOR OF THE
ESTATE OF RUFUS OWENS,
DECEASED, AND ON BEHALF OF
THE WRONGFUL DEATH

Opinion Delivered March 13, 2014

APPEAL FROM THE OUACHITA
COUNTY CIRCUIT COURT
[NO. CV–2012–80–6]

HONORABLE DAVID F. GUTHRIE,
JUDGE

SLIP OPINION

BENEFICIARIES OF RUFUS OWENS
                                    APPELLEE

AFFIRMED.

**JOSEPHINE LINKER HART, Associate Justice**

Appellee, Rufus Brian Matthews, as special administrator of the estate of Rufus Owens, deceased, and on behalf of the wrongful death beneficiaries of Rufus Owens, brought claims against appellants, Pine Hills Health and Rehabilitation, LLC ("Pine Hills") and others,[1] for injuries sustained by Owens arising out of his care and treatment at Pine Hills. Appellants filed a joint motion to dismiss the complaint and compel arbitration pursuant to an "Arbitration Agreement." The circuit court denied the motion, and appellants bring this interlocutory appeal, as permitted by Ark. R. App. P.–Civ. 2(a)(12) (2013). On appeal, appellants assert that the circuit court erred in finding that the Arbitration Agreement was unenforceable because of the absence of a signature of a Pine Hills representative. We hold that there was no objective evidence of mutual assent, and we affirm the circuit court's decision.[2]

---

[1]The claims against separate defendant Michael Hunter were dismissed without prejudice.

[2]Appellants also argue on appeal that the circuit court erred in finding that the Arbitration Agreement was unenforceable because the arbitrator named therein was no longer available to act as the arbitrator and because the Arbitration Agreement was unconscionable. Because we hold that the Arbitration Agreement was unenforceable for the reason discussed *infra*, we do not decide these arguments or discuss matters relating to those arguments. *See DIRECTV, Inc. v. Murray*, 2012 Ark. 366, at 9–11, ___ S.W.3d ___, ___.

SLIP OPINION

According to appellee's complaint, Owens was admitted in December 2007 to a facility then known as Golden LivingCenter in Camden, Arkansas. According to the complaint, ownership of the facility changed on July 1, 2009, and the name of the facility was changed to Pine Hills Health and Rehabilitation, LLC. The complaint also stated that, except for times when he was hospitalized, Owens remained a resident of the facility until March 7, 2012, when he was transferred to the Ouachita County Medical Center, where he died on March 15, 2012. Following Owens's death, Rufus Brian Matthews was appointed special administrator of Owens's estate and brought this lawsuit against appellants, asserting various claims, including negligence, medical malpractice, and violations of statutes relating to long-term care. Appellee sought compensatory and punitive damages.

Appellants answered, filed amended answers, and then moved to compel arbitration, arguing that Matthews, who held Owens's power of attorney, previously had signed an Arbitration Agreement. Attached to appellants' motion was the Arbitration Agreement. It was signed by Matthews as the "Responsible Party," and his signature was dated June 29, 2009. The Arbitration Agreement provided as follows:

> This Arbitration Agreement (the "Agreement") is hereby entered between Pine Hills Health and Rehabilitation, LLC (the "Facility") and Rufus Owens (the Resident or the Responsible Party) in conjunction with an agreement for admission and for the provision of nursing facility services (the "Admission Agreement") by Facility to Resident. The "Responsible Party" means an agent, some other individual, or family member who agrees to assist the Facility in providing for the Resident's admission, health care, payment, maintenance, and discharge. The Resident and the Responsible Party shall be collectively referred to as the "Resident." The Resident and the Facility shall be collectively referred to as the "parties."

The parties to this Agreement acknowledge and agree that upon execution, this

3

SLIP OPINION

Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act. The Responsible Party acknowledges further that execution of this Agreement affects his or her individual rights. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, ("NAF") which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1–16.

(Footnote omitted.)

The Arbitration Agreement also provided, in bold type, as follows:

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The Arbitration Agreement further provided that the "Resident" understood that he had the "right to seek legal counsel concerning this Arbitration Agreement," that the "execution of the Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility," and that the Arbitration Agreement "may be rescinded by written notice to the Facility from the Resident within thirty days of signature."

Immediately above the signature blocks for the "Resident" and for the "Responsible Party," the Arbitration Agreement provided as follows:

SLIP OPINION

The undersigned certifies that he or she was read this Arbitration Agreement and that it was [sic] been fully explained to him or her, that he or she understands its contents, and has received a copy of the provision and that he or she is the Resident, or the person duly authorized by the Resident or otherwise to execute this Agreement and accept its terms.

The Arbitration Agreement was signed by Matthews as the "Responsible Party" at the bottom of the second page. Language at the top of the second page, however, indicated that the Arbitration Agreement was a three-page document, but the third page was not attached to the other two pages.

Appellee responded, attaching to the response an exemplar of what would have constituted the third page of the Arbitration Agreement, which contained a signature block for the "Facility," including lines for the "Signature of Facility Representative" and a date. Appellee argued that the Arbitration Agreement was unenforceable because there was "no evidence of mutual assent," as the Arbitration Agreement did not bear the signature of a representative of Pine Hills. In reply to appellee's response, appellants asserted that the signature of a representative of Pine Hills was unnecessary and that Pine Hills had manifested its assent to the Arbitration Agreement as evidenced by its conduct and the language of the Arbitration Agreement.

The circuit court held a hearing on appellants' motion to compel arbitration. No testimony was presented, but a copy of an "Admission Agreement" for Owens's admission into Pine Hills was introduced into evidence. That document was signed by Matthews as the "Responsible Party[ ]" and by a Pine Hills "Facility Representative[ ]." The signature block indicated that it was signed July 1, 2009, two days after the date of Matthews's signature on

the Arbitration Agreement. The Admission Agreement contained a provision relating to arbitration, providing as follows:

> The Resident acknowledges that disputes arising out of this Agreement, including the provision of care and services, may be submitted to arbitration, if the Resident elects to do so, by signing a separate agreement executed between the Nursing Facility and the Resident. Agreeing to arbitration is not a condition of admission or to continuing care.

In a written order, the circuit court denied the motion to compel arbitration. The court found that the "lack of a signature indicating [Pine Hills's] consent to be bound by the agreement renders the agreement deficient and non-binding under basic contract law." Appellants appeal from that decision.

On appeal, appellants argue that the absence of a signature by a representative of Pine Hills does not render the Arbitration Agreement unenforceable. Appellants assert that their conduct—specifically, preparing a form Arbitration Agreement and Admission Agreement, presenting a nonmandatory offer of arbitration to incoming residents, retaining both agreements, and attempting to enforce the Arbitration Agreement—indicate Pine Hills's manifestation of its assent to the Arbitration Agreement. Further, appellants focus on the language of the Arbitration Agreement, which they argue indicates Pine Hills's assent to the Arbitration Agreement. Particularly, appellants assert that the Arbitration Agreement provided that the Resident, and not Pine Hills, may rescind the Arbitration Agreement within thirty days of signing and that the Resident may wish to consult an attorney. Appellants also note that, above the signature block for the Resident and Responsible Party, the Arbitration Agreement provided that the "undersigned" certified that he read and understood the

6

SLIP OPINION

Arbitration Agreement and is either the Resident or the person authorized by the Resident to execute the Arbitration Agreement. Appellants observe that there was no similar certification above the signature block for the "Facility Representative." Appellants also focus on the language in the Admission Agreement, as "reflect[ing] the intent to invite the Resident's assent," by providing that the "Resident acknowledges that disputes arising out of this Agreement . . . may be submitted to arbitration, if the Resident elects to do so, by signing a separate agreement executed between the Nursing Facility and the Resident." Appellants further suggest that this language indicates that "signing" is not synonymous with "execut[ing]" an agreement, that "executed" means "commencement of the contract," and that ambiguities must be resolved in favor of arbitration. Appellants conclude that "Pine Hills made an offer that was accepted, demonstrating mutual assent and a valid contract."

The issue here—whether there is an enforceable arbitration agreement between Pine Hills and appellee—is a matter of contract construction; to answer that question, we look to the language of the agreement and apply principles of state contract law. *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, at 6, ___ S.W.3d ___, ___. The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, at 4, ___ S.W.3d ___, ___.

The essential elements of a contract are competent parties, subject matter, legal consideration, mutual agreement, and mutual obligations. *Independence Cnty. v. City of Clarksville*, 2012 Ark. 17, at 6, 386 S.W.3d 395, 399. Both parties must manifest assent to the

SLIP OPINION

particular terms of a contract. *DIRECTV, Inc.*, 2012 Ark. 366, at 9, ___ S.W.3d at ___. This court employs an objective test for determining mutual assent, by which we mean objective indicators of agreement and not subjective opinions. *Ward v. Williams*, 354 Ark. 168, 180, 118 S.W.3d 513, 520 (2003).

Though a hearing was held on the issue of whether Pine Hills had manifested its assent to the contract, no testimony was presented at the hearing. What we have before us then are the first two pages of the Arbitration Agreement, an exemplar of the missing third page, and the Admission Agreement. There is no signature on the Arbitration Agreement by a representative of Pine Hills to indicate mutual assent. Rather, there is a document whose missing third page contained a signature block for a representative of Pine Hills. Certainly, "manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." Restatement (Second) of Contracts § 19(1) (1981). Moreover, a "written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein." *Parker v. Carter*, 91 Ark. 162, 167, 120 S.W. 836, 838 (1909). Though appellants assert that their conduct indicated Pine Hills's manifestation of its assent to the Arbitration Agreement, there was no testimony presented concerning any conduct that would have manifested assent. Appellee cites provisions in the Arbitration Agreement that they assert evidence Pine Hills's manifestation of its assent: the provisions stating that the Responsible Party could rescind the Arbitration Agreement and the certification that he read and understood the Arbitration Agreement. This language, however, does not establish Pine

Hills's manifestation of its assent. Rather, it establishes only the Responsible Party's manifestation of assent.

Further, appellants' reliance on language in the Admission Agreement—a separate agreement signed by a Pine Hills representative two days after Matthews had signed the Arbitration Agreement—does not illuminate whether Pine Hills also manifested its assent to the Arbitration Agreement. We note that the Arbitration Agreement provides that the "parties to this Agreement acknowledge and agree that upon execution, this Agreement becomes part of the Admission Agreement." Also, we note that the Admission Agreement provided that the "Resident acknowledges that disputes arising out of this Agreement . . . may be submitted to arbitration, if the Resident elects to do so, by signing a separate agreement executed between the Nursing Facility and the Resident." While appellants assert that "signing" is not synonymous with "execut[ing]" an agreement and that "executed" means "commencement of the contract," we observe that no testimony was presented regarding any acts that would have indicated the "commencement of the contract." In employing an objective test for determining mutual assent, we hold that the Arbitration Agreement does not establish that Pine Hills manifested its assent to the Arbitration Agreement. Because there was no manifestation of mutual assent, the Arbitration Agreement was unenforceable. We affirm the circuit court's decision.

Affirmed.

*Kutak Rock LLP*, by: *Mark W. Dossett* and *Samantha B. Leflar*, for appellants.

*Wilkes & McHugh, P.A.*, by: *William P. Murray, III*; *Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; and *The Edwards Firm, P.L.L.C.*, by: *Robert H. Edwards*, for appellee.