Cite as 2019 Ark. 305

# SUPREME COURT OF ARKANSAS

**No.** CV–18–45

|  |  |
|---|---|
|  | **Opinion Delivered:** October 31, 2019 |
| ROBINSON NURSING AND REHABILITATION CENTER, LLC, D/B/A ROBINSON NURSING AND REHABILITATION CENTER; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON<br><br>APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-14-4568]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| V. |  |
| ANDREW PHILLIPS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY PHILLIPS, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF DOROTHY PHILLIPS; AND ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br><br>APPELLEES | <u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

In this interlocutory appeal, appellants Robinson Nursing and Rehabilitation Center, LLC, d/b/a Robinson Nursing and Rehabilitation Center; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton (collectively "Robinson") appeal from the Pulaski County Circuit Court's order denying motions to compel arbitration of a class-action complaint filed by appellees Andrew Phillips, as personal representative of the estate of Dorothy Phillips, and others (collectively "Phillips"). For

reversal, Robinson argues that the circuit court erred in refusing to enforce valid arbitration agreements. We affirm in part and reverse and remand in part.

On September 4, 2015, Phillips filed a first amended class-action complaint against Robinson alleging claims that Robinson had breached its admissions and provider agreements, violated the Arkansas Deceptive Trade Practices Act ("ADTPA"), committed negligence and civil conspiracy, and been unjustly enriched. He sought compensatory, economic, and punitive damages, as well as attorney's fees, interest, and costs. Phillips filed an amended motion for class certification on September 10, 2015, requesting that a class be certified of all residents and estates of residents who resided at Robinson from June 11, 2010, to the present.

On September 24, 2015, Robinson filed an answer to the complaint in which it denied the allegations and asserted, among other defenses, that the claims of putative class members were barred from being litigated in a court of law by virtue of arbitration agreements. Robinson also filed a response to the motion for class certification.

The circuit court entered an order granting class certification on March 4, 2016, and Robinson appealed to this court. We affirmed the grant of class certification with respect to Phillips's breach-of-contract, ADTPA, and unjust-enrichment claims, but reversed with respect to the negligence claim. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2017 Ark. 162, 519 S.W.3d 291.

On September 1, 2017, Robinson filed a motion to compel arbitration with regard to nine class members/residents with arbitration agreements that had been signed by the residents' legal guardians. This motion was later supplemented to add one additional class

2

member. Robinson also filed separate motions to compel arbitration as to 105 residents who had signed the agreements on their own behalf and as to 158 residents whose agreements had been signed by a person with power of attorney over that resident. On September 5, 2017, Robinson filed a fourth motion to compel arbitration as to 271 residents who had "responsible parties" execute arbitration agreements on their behalf. The individual arbitration agreements, admission agreements, and any other accompanying documents were attached to the motions to compel.[1]

On September 7, 2017, Phillips filed an unopposed motion for extension of time to respond to Robinson's motions to compel arbitration. The motion was granted, and the circuit court extended the time for response until October 17, 2017. However, before Phillips filed a response, the circuit court summarily ruled at a September 22, 2017 hearing that all four of Robinson's motions to compel arbitration were denied. Neither party presented argument in support of, or in opposition to, the motions or objected to the timing of the circuit court's ruling at the hearing. The court also denied Robinson's request for findings of fact and conclusions of law. A written order generally denying the motions to compel was entered on October 19, 2017, and Robinson filed a timely notice of appeal from the order.

On appeal, Robinson argues that the circuit court erred in denying its motions to compel arbitration. Robinson contends that the 544 arbitration agreements at issue were

---

[1] Because there are several different versions of the admissions and arbitration agreements signed by the residents, we do not preliminarily set forth all of the relevant language, and we instead refer to the applicable provisions during our discussion of the issues presented on appeal.

3

valid and enforceable, that the claims asserted by Phillips were within the scope of the agreements, and that the circuit court's ruling was contrary to this court's strong policy in favor of arbitration.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2018). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669. When a circuit court denies a motion to compel arbitration without expressly stating the basis for its ruling, as it did here, that ruling encompasses the issues presented to the circuit court by the briefs and arguments of the parties. *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356; *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119.

The parties do not dispute that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the agreements at issue. The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Henry*, *supra*. Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Arnold*, *supra*; *Henry*, *supra*.

Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Henry*, *supra*. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Newby*, *supra*. In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered: (1) Is there a valid agreement to

4

arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope? *Id.*

Phillips preliminarily argues in his response brief that the motions to compel arbitration were barred by the law-of-the-case doctrine and that Robinson also waived its right to arbitrate. Phillips claims that Robinson's failure to attempt to exclude residents who were subject to arbitration agreements from the proposed class in its prior appeal from class certification now bars it from seeking to compel those class members to participate in arbitration. He further contends that Robinson waived its right to arbitrate by waiting for more than two years to request it. As Robinson asserts, however, these arguments are not properly preserved for our review. Phillips did not file a response to the motions to compel, nor did he raise these issues to the circuit court at the hearing. Further, because the circuit court's general denial constituted a ruling only on the arguments that were raised by the parties, Phillips has failed to secure a ruling on either the law-of-the-case doctrine or waiver.[2] *Newby, supra.* We therefore decline to address them and instead discuss only the issues raised by Robinson in its motions to compel—namely, whether there was a valid agreement to arbitrate between the parties and whether the claims fell within the scope of the agreements.

---

[2]While Phillips contends that the circuit court "touched on" these issues at the hearing, it is apparent from the circuit court's comments that it was only noting its concern about successive appeals in a case such as this one that involves both class-action certification and the potential arbitration of certain class members' claims.

I. *Whether There Is a Valid Agreement to Arbitrate Between the Parties*

We must first determine the threshold inquiry of "whether a valid agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent." *Henry*, 2014 Ark. 361, at 6, 444 S.W.3d at 360. We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* at 6–7, 444 S.W.3d at 360. As the proponent of the arbitration agreements, Robinson has the burden of proving these essential elements. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 466 (2008).

A. Validity of the 271 Arbitration Agreements Executed by "Responsible Parties"

Phillips first challenges the validity of Robinson's motion to compel with respect to the 271 arbitration agreements that were not signed by the resident, a legal guardian of the resident, or a person with a power of attorney over the resident. These agreements were instead signed by the resident's "responsible party" or "legal representative." Phillips contends that these agreements are invalid because the signors did not have legal authority to act on the residents' behalf or to bind the residents to arbitration.

When a third party signs an arbitration agreement on behalf of another, we must determine whether the third party was clothed with the authority to bind the other person to arbitration. *Courtyard Gardens Health & Rehab., LLC v. Sheffield*, 2016 Ark. 235, 495 S.W.3d 69. The burden of proving an agency relationship lies with the party asserting its existence. *Id.* Not only must the agent agree to act on the principal's behalf and subject to

6

his control, but the principal must also indicate that the agent is to act for him. *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, 428 S.W.3d 437.

Robinson admits that the "responsible parties" at issue here did not have legal authority to act as agents on the residents' behalf, as there were no documents presented by these persons demonstrating such authority. Instead, Robinson argues that the residents were bound by the arbitration agreements by virtue of being third-party beneficiaries. Two elements are necessary in order for the third-party-beneficiary doctrine to apply under Arkansas law: (1) there must be an underlying valid agreement between two parties, and (2) there must be evidence of a clear intention to benefit a third party. *Perry v. Baptist Health*, 358 Ark. 238, 189 S.W.3d 54 (2004); *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286; *Broadway Health & Rehab, LLC v. Roberts*, 2017 Ark. App. 284, 524 S.W.3d 407.

The critical question in determining whether the third-party-beneficiary doctrine applies to the 271 arbitration agreements at issue is whether the "responsible parties" were signing in their individual capacity or in a representative capacity. *Cook*, *supra*. Robinson asserts that these persons were acting in their individual capacity such that it created a valid and enforceable contract between those persons and Robinson, with a clear intention to benefit the nursing-home residents. Phillips, however, argues that these persons signed the agreements only on behalf of, and as representatives of, the residents.

There are three different versions of the arbitration agreements presented by Robinson, with each version using slightly different terms to identify the parties to the agreement. Two of the versions indicate that the arbitration agreement is entered into

between "the Facility" and the "Resident and/or Legal Representative," with the resident and legal representative collectively referred to as the "Resident." The signature lines similarly provide for a signature by the "Resident and/or Legal Representative" and the facility's representative. These arbitration agreements also contain a box that may be checked if a copy of guardianship papers, a durable power of attorney, or other documentation has been provided to the facility, although as noted earlier, no such documentation was provided for these 271 residents. The associated admissions agreements refer either to the "resident or resident responsible party" or to the "resident or resident representative/agent," with "agent" defined as "a person who manages, uses, controls, or otherwise has legal access to Resident's income or resources that legally may be used to pay Resident's share of cost or other charges not paid by the Arkansas Medicaid Program." The signature lines have a space for the resident and for either the "Resident Responsible Party" or the "Resident Representative/Agent" to sign, depending on the version of the admissions agreement, along with the facility representative.

The third version of the arbitration agreement states that it is between "the Facility," "the Resident," and "the Resident's Responsible Party." "Responsible Party" is defined as "your legal guardian, if one has been appointed, your attorney-in-fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care and maintenance." The agreement has signature lines for the facility representative, the "Resident," and the "Responsible Party," and it also has a line to indicate the "Responsible Party's Relationship to Resident." These agreements also have the box to be checked if documentation has been provided to Robinson

8

demonstrating a guardianship or power of attorney over the resident. The admissions agreement associated with this version of the arbitration agreement indicates that the "Resident," the "Facility," and the resident's "Responsible Party" agree to the terms and conditions contained therein. The definition of "Responsible Party" is consistent with that in the arbitration agreement, with additional language stating this "includes a person who manages, uses, controls, or otherwise has legal access to Resident's income or resources that legally may be used to pay Resident's share of cost or other charges not paid by the Arkansas Medicaid Program or any other source." The signature lines of these admissions agreements include spaces for the "Resident," the "Resident's Responsible Party," and the facility representative.

Although this court has not previously addressed this issue in the context of nursing-home residents, our court of appeals has discussed the third-party-beneficiary doctrine in cases involving arbitration agreements that are virtually identical to those at issue here. While we are not bound by opinions by the court of appeals, we may treat such decisions as persuasive authority. *Independence Cnty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395.

In *Progressive Eldercare Services-Chicot, Inc. v. Long*, 2014 Ark. App. 661, at 4, 449 S.W.3d 324, 327, the court held that the doctrine did not apply to bind the resident to arbitration agreements that were signed by the resident's "Legal Representative," who was his wife. The court of appeals stated that the wife did not have actual or apparent authority over the resident and that the documents had clearly been designed to be signed by either the resident or his representative; thus, there was no valid underlying agreement between the facility and the resident's wife. *Id.* Similarly, in *Broadway Health & Rehab, LLC v. Roberts*,

9

*supra*, the arbitration agreement provided for signatures by either the "Resident" or the "Resident Representative." *Id*. at 2, 524 S.W.3d at 409. The resident's daughter signed the agreement, noting "Daughter" in the space provided to indicate her basis for acting as the "Resident Representative." *Id*. at 3, 524 S.W.3d at 409. The court of appeals held, as it did in *Long*, that a valid agreement did not exist because the daughter had not signed in her individual capacity. *Id*. at 7, 524 S.W.3d at 412.

The court of appeals subsequently addressed the situation of a daughter who had signed an arbitration agreement as the "Responsible Party" for her mother in *Pine Hills Health & Rehab. LLC v. Talley*, 2018 Ark. App. 131, 546 S.W.3d 492. The court again held that the daughter did not intend to sign the agreement in an individual capacity and that the third-party-beneficiary doctrine did not apply to bind her mother to arbitration. *Id*., 546 S.W.3d 492.

Finally, the court of appeals recently decided *Hickory Heights Health & Rehab, LLC v. Cook*, *supra*, a case that involved the same pertinent language as in the third version of Robinson's arbitration agreements discussed above. In *Cook*, the parties to the arbitration agreement were also listed as the facility and "The Resident and/or Responsible Party"; the terms "Resident and/or Responsible Party" were used throughout both the arbitration and admission agreements to define the rights and responsibilities of the parties; the definition of "Responsible Party" was identical to that used in the arbitration and admission agreements here; and the same signatures lines and box to be checked if providing supporting documentation of authority were also present. *Id*. at 2–3, 557 S.W.3d at 288–89. The daughter, who did not have legal authority to do so, signed the agreements on

behalf of her resident mother and noted her relationship as "daughter" on the space provided on the arbitration agreement. *Id.* The court of appeals affirmed the circuit court's refusal to compel arbitration, holding that there was no clear indication in the arbitration agreement to demonstrate that the daughter was signing in her individual capacity rather than in her representative capacity. *Id.* at 10–11, 557 S.W.3d at 292.

In its briefs, which were filed prior to the opinion in *Cook*, Robinson attempts to distinguish the situation in both *Long* and *Roberts* by noting that the term "Resident and/or Responsible Party" was used to describe the parties to the agreements in the present case rather than "Resident Representative" or "Legal Representative." Robinson further points to the definition of "Responsible Party" used in the admission and arbitration agreements here. Robinson argues that the contractual language in this case clearly contemplates an individual other than a resident entering into the agreements in his or her individual capacity, as opposed to the language used in cases such as *Roberts*.

By its argument, Robinson essentially concedes that the third-party-beneficiary doctrine does not apply to two of the three versions of its arbitration agreements, both of which utilize the terms "Resident Representative" or "Legal Representative." Furthermore, we agree with the court of appeals' analysis in *Cook*, which held that the doctrine did not apply to an arbitration agreement with language identical to that contained in the third version of Robinson's agreements. Other than the change in nomenclature, there is no real distinction between the different versions of the agreements with regard to the rights or responsibilities of the "Resident Representative," "Legal Representative," or "Responsible Party." Although Robinson points to the provision in the agreements stating

11

that the "Responsible Party" agrees to assist the facility in providing for the resident's health, care, and maintenance, the agreements do not place any specific obligations or personal liability upon the "Responsible Party." For instance, the "Responsible Party" is obligated to reimburse the facility for the resident's costs only if he or she otherwise has "legal access" to the resident's income or resources. We therefore conclude that Robinson failed to demonstrate that the individuals signing these arbitrations agreements were acting in an individual rather than a representative capacity.[3] Because there was no valid arbitration agreement between Robinson and these individuals, the circuit court correctly denied Robinson's motion to compel arbitration with respect to these 271 class members.

B. Validity of the Arbitration Agreements Applicable Only to Disputes Involving an Amount Greater than $30,000

Phillips next contends that Robinson has failed to demonstrate the essential contractual element of mutuality of obligation with respect to the arbitration agreements that limit arbitration to controversies and disputes involving an amount greater than $30,000. The parties agree that 216 of the 544 arbitration agreements contain this limitation; however, we note that some of these 216 agreements are already included within the 271 arbitration agreements that were held to be invalid in our discussion above. The language in the challenged agreements provides as follows:

---

[3]Robinson cites two federal district court cases that reach a different conclusion based on similar contractual language. *See Northport Health Servs. of Ark., LLC v. Cmty. First Tr. Co.*, No. 2:12-CV-02284, 2014 WL 217893 (W.D. Ark. Jan. 21, 2014); *Northport Health Servs. of Ark., LLC v. Rutherford*, No. 07-5184, 2009 WL 10673107 (W.D. Ark. March 17, 2009). However, these decisions are not binding on this court, *Dickinson v. SunTrust Nat'l Mortg. Inc.*, 2014 Ark. 513, 451 S.W.3d 576, and as discussed herein, we find our court of appeals' opinions on this issue to be more persuasive.

It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Nursing Facility to the Patient and involving an amount of or greater than thirty-thousand dollars and no cents ($30,000.00) shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process. This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Nursing Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, fact, or inducement, when the amount in controversy equals or exceeds thirty-thousand dollars and no cents ($30,000.00).

The element of mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. *Henry, supra*; *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002). We have held that there is no mutuality of obligation when one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Henry, supra*; *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). "Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties." *Henry*, 2014 Ark. 361, at 7, 444 S.W.3d at 360.

Phillips primarily relies on our decisions in both *Harris* and *Henry* as support for his argument that the arbitration agreements containing the $30,000 limitation fail due to a lack of mutuality. In *Harris*, the arbitration clause was held to be unenforceable because the clause allowed the check casher the right to pursue all civil remedies including a returned-check fee, court costs, and attorney's fees when a borrower's check was returned by his or her

financial institution, while the customer was limited to arbitration. Although the clause in *Harris* allowed both parties access to small-claims court, we rejected as "disingenuous" E-Z Cash's argument that this provision supplied the necessary element of mutuality. *Id.* at 141, 60 S.W.3d at 442. We stated that "[t]aking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that E-Z Cash would be required to submit to arbitration." *Id.*

Likewise, in *Henry*, we concluded that the arbitration clause lacked mutuality because it reserved to the nursing home the right to litigate any billing or collection disputes while requiring arbitration for all other claims. We stated that the nursing home had "excluded from arbitration the only likely claim that it might have against a resident" and that its argument that a private-pay resident might have a billing claim against it "rings hollow[.]" *Henry*, 2014 Ark. 361, at 8, 444 S.W.3d at 361. Because the arbitration clause imposed no real liability on the nursing home to arbitrate its own claims, we held that no valid arbitration agreement existed due to a lack of mutuality. *Id.* at 8–9, 444 S.W.3d at 361.

Phillips argues that the $30,000 limitation in many of the arbitration agreements in this case reserves Robinson the right to litigate the only likely claim that it will ever have against a resident, which is a billing or collection dispute, while requiring residents to submit to binding arbitration of their claims, which are likely to be in tort. Phillips points to certain provisions in the admissions agreements to show that the maximum debt that a resident could accumulate before being discharged is between $6,800 and $7,600, which is well below the $30,000 arbitration threshold. In response, Robinson asserts that the cases discussed above are distinguishable because they specifically exclude a particular category or

14

type of claim from arbitration instead of imposing a monetary threshold. Robinson also argues that there are other possible charges besides the daily room rate that a resident could incur, such as private nursing or special equipment, and that it is "certainly conceivable" that it could have a claim against a resident greater than $30,000. Further, Robinson contends that the resident could potentially have a claim against it for property loss that would not be subject to arbitration.

We do not discern a meaningful distinction between the arbitration agreements at issue here and the ones in *Harris* and *Henry* with regard to the required element of mutuality. As in *Henry*, Robinson's attempt to demonstrate mutuality in this case by pointing to certain hypothetical situations "rings hollow." *Id*. at 8, 444 S.W.3d at 361. We also note that the court of appeals recently decided a case involving the same $30,000 limitation in a nursing–home arbitration agreement and held that the agreement was invalid for lack of mutuality. *Hickory Heights Health & Rehab, LLC v. Adams*, 2018 Ark. App. 560, 566 S.W.3d 134. In reaching its decision, the court rejected arguments by the facility that were virtually identical to those in this case.[4] *Id*. The court of appeals stated that "the arbitration provision was obviously drafted to shield Hickory Heights from defending itself in the court system against the majority of residents' potential claims while maintaining its rights to utilize the court system for its likely claims against residents." *Id*. at 7, 566 S.W.3d at 138.

---

[4]For example, with regard to the facility's argument about a potential claim by the resident for loss of property, the court of appeals noted that the admissions agreement specifically disclaimed all liability against the facility for loss of personal property not delivered to an employee for safekeeping and that the facility further reserved the right to refuse the safekeeping of personal property over fifty dollars. These same provisions are contained in Robinson's admissions agreement.

15

We agree with the reasoning in *Adams* and conclude that the arbitration agreements containing the $30,000 limitation in this case lack mutuality. As in *Adams*, we believe that the arbitration agreements here serve to shield Robinson from defending itself in the court system against the majority of potential claims by residents, while reserving its right to utilize the court system for its likely claims. Accordingly, these arbitration agreements are not valid or enforceable, and the circuit court correctly denied the motions to compel as to these agreements.[5]

## C. Invalidity of Additional Arbitration Agreements Based on Lack of Mutual Agreement or Assent

Phillips also challenges the validity of certain arbitration agreements based on lack of mutual agreement or assent. Specifically, he contends that Robinson failed to authenticate the signatures of the parties to the arbitration agreements; that Robinson failed to show that its representatives were authorized to bind the nursing home to the terms of the agreement; that Robinson failed to sign some of the arbitration agreements; and that Robinson has failed to produce a complete copy of each arbitration agreement.

With regard to the authentication of the signatures and the authorization of its agents to sign on its behalf, Robinson correctly asserts that Phillips failed to put forth any evidence, either before the circuit court or this court, that any of the signatures on the arbitration agreements were not genuine or that Robinson's representatives were not authorized to sign on its behalf. As Robinson contends, Arkansas Code Annotated section 16-46-102 (Repl. 1999) provides that when a writing purporting to have been executed by one of the

---

[5]Our review of the record reveals approximately 109 arbitration agreements that fail on this basis, in addition to the 271 agreements invalidated earlier in this opinion.

parties is referred to in and filed with a pleading, it may be read as genuine against that party unless he denies its genuineness by affidavit before the trial is begun. No such affidavit was filed in this case. While Phillips cites Arkansas Rule of Evidence 901(a) as support for his argument, this rule relates only to authentication as a condition for admissibility in evidence, and it is not relevant to our consideration in this appeal.

We agree that Robinson's failure to sign certain arbitration agreements is fatal to the validity of these agreements, however. We have held that both parties must manifest assent to the particular terms of a contract. *Pine Hills Health & Rehab., LLC v. Matthews*, 2014 Ark. 109, 431 S.W.3d 910. We employ an objective test for determining mutual assent—meaning objective indicators of agreement and not subjective opinions. *Id.* It is a matter of basic contract law that, without its signature, Robinson is unable to demonstrate such mutual assent. *See id.* (holding that arbitration agreement was invalid due to lack of mutual assent where facility's signatures were missing). While Robinson argues that it demonstrated its assent by admitting residents to its facility and providing services, the arbitration agreement was a separate contract from the admissions agreement, regardless of whether it was incorporated into or operated as an addendum to the admissions agreement. As in *Matthews*, there are no other objective indicators of mutual assent here. Thus, we affirm the circuit court's denial of the motions to compel with respect to the arbitration agreements that were not signed by Robinson.[6]

---

[6]Phillips asserts that there are twenty-eight arbitration agreements that were not signed by Robinson. However, excluding those already held to be invalid for other reasons discussed herein, our review reveals approximately thirteen additional arbitration agreements that contain no signature by Robinson and that are therefore invalid for lack of mutual assent.

17

Similarly, Phillips's argument that any incomplete arbitration agreements are invalid also has merit. Robinson cannot meet its burden to demonstrate mutual agreement or assent to the terms of the arbitration agreement if the complete agreement is not provided. Although Robinson argues that the incomplete agreements are sufficient because they are identical to other agreements that are contained in the record, there are at least three different versions of the arbitration agreements, as we discussed earlier. Accordingly, even though the signature pages of the agreements may have been provided, Robinson cannot show which version of the agreement the parties signed. The circuit court therefore correctly denied arbitration as to any incomplete arbitration agreements.[7]

In our de novo review, we noted additional deficiencies that were apparent from either the face of the arbitration agreements or the associated documents related to the essential element of mutual agreement. First, as to resident Joyce Moring, neither the arbitration agreement nor the admissions agreement is dated. Because Moring's arbitration agreement was signed by a legal guardian who presented documentation of temporary guardianship over Moring, there is no proof that her guardian was legally authorized to sign on her behalf at the time the arbitration agreement was executed. Thus, this arbitration agreement is not valid or enforceable.

In addition, resident Ruby McGrew's arbitration agreement is not dated. Because her agreement was signed by an individual with power of attorney ("POA") over her, it cannot be determined from the documents before us whether that individual had the legal

---

[7]Phillips claims that 30 of the 544 arbitration agreements are incomplete. However, some of these incomplete agreements may be invalid on other bases already discussed herein.

18

authority to sign the agreement on McGrew's behalf at that time. Accordingly, Robinson failed to prove McGrew's agreement to arbitrate, and the motion to compel arbitration was correctly denied as to her.

Finally, the documents that were provided to Robinson demonstrating the signor's POA over resident Eldin Hodges are also ineffective to show Hodges's agreement to arbitrate. These POA documents clearly exclude the authority to assent to arbitration. Thus, Hodges's arbitration agreement was invalid, and Robinson's motion to compel was correctly denied as to him as well.

D. Invalidity of Arbitration Agreements Based on Incapacity of Residents

Phillips also challenges the validity of the 105 arbitration agreements signed by the residents on another basis. He contends that Robinson has exclusive access to the information needed to determine the residents' competency at the time they signed the arbitration agreements, but that Robinson has refused to provide this information. Thus, Phillips argues that Robinson has failed to demonstrate the essential element of competency.

As Phillips concedes, the law presumes the capacity to contract, and the burden of establishing incapacity is on the party challenging the contract. *Harris v. Harris*, 236 Ark. 676, 370 S.W.2d 121 (1963). Phillips did not file a response to the motions to compel challenging the residents' competency to sign the arbitration agreements; nor did he object to the circuit court issuing its ruling before his response time had expired or before discovery had been completed. Because he failed to raise the issue of competency below or obtain a ruling, we are unable to address this issue on appeal. *E-Z Cash Advance*, *supra.*

19

In sum, after reviewing the record before us, Robinson has failed to meet its burden of proving a valid and enforceable arbitration agreement with respect to each of the agreements that contain the deficiencies previously discussed. Accordingly, the circuit court's order denying the motions to compel arbitration are affirmed as to those agreements.

II. *Whether the Claims Asserted Are Within the Scope of the Arbitration Agreements*

Robinson has met its burden to prove the validity of the remainder of the arbitration agreements not already discussed. Thus, the next threshold issue that must be addressed is whether the claims asserted by Phillips fall within the scope of those remaining arbitration agreements. Depending on the version of the arbitration agreement, the language states that it applies broadly to "any and all claims, disputes, and controversies arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided" or to "all disputes arising from this or any future stays in this Facility." Phillips does not contend that the claims brought in this class action do not fall within the scope of these arbitration agreements, and we conclude that this requirement is satisfied here. We therefore reverse and remand with respect to those arbitration agreements not otherwise held to be invalid by this opinion.

Affirmed in part; reversed and remanded in part.

Special Justice GREG VARDAMAN joins in this opinion.

WOMACK, J., concurs in part and dissents in part.

WOOD, J., not participating.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I agree with the majority that Phillips did not preserve issues regarding the law of the case doctrine and waiver arguments. I further agree that Phillips failed to present evidence regarding the genuineness of signatures of Robinson's representatives. Finally, I agree with the majority that the agreements not signed by Robinson should be excluded. However, a principal question on this appeal is whether the nursing home plaintiffs are required to arbitrate their claims against Robinson Nursing and Rehabilitation Center under the third-party beneficiary doctrine. I conclude that the arbitration agreements signed by "responsible parties" are subject to arbitration, and I would therefore reverse the circuit court's decision in relevant part. I must also dissent from the majority's analysis regarding the mutuality of obligations. Because I believe the $30,000 arbitration threshold does not foreclose mutuality, I would reverse the circuit court's decision on that issue as well.

I.

Robinson contends that because the "responsible parties" who signed the arbitration agreements were contracting in their individual capacities, the plaintiffs are bound by the agreement as third-party beneficiaries to the contracts. Applying the basic Arkansas contract principles relied upon in a similar case, *Northport Health Servs. of Ark., LLC v. Rutherford*, No. 07-5184, 2009 WL 10673107 (W.D. Ark. Mar. 17, 2009), I would direct the circuit court to compel arbitration as to those plaintiffs.[1]

---

[1]While a federal court decision construing Arkansas law is not binding on this court, we have long held that "the opinion of such eminent authority is persuasive." *Baldwin Co. v. Maner*, 224 Ark. 348, 349, 273 S.W.2d 28, 30 (1954); *see also Roeder v. United States*, 2014 Ark. 156, at 12 n.8, 432 S.W.3d 627, 635 n.8.

21

In *Rutherford*, an Arkansas federal district court examined whether an arbitration agreement signed by a "responsible party" for a nursing home resident bound the resident to the agreement as a third-party beneficiary. *Id*. at 5. Just as the agreements here, the *Rutherford* contract defined a "responsible party" as, in part, a person "who agrees to assist the [nursing home] in providing for [the resident's] health, care and maintenance." *Id*. This language indicates that by voluntarily signing as a "responsible party," the individual intends to be bound by the agreement for the purpose of assisting the nursing home in caring for the resident. *Id*. To hold otherwise would render the language defining a "responsible party" meaningless, which is contrary to Arkansas contract law. *Id*. (citing *North v. Philliber*, 269 Ark. 403, 602 S.W.2d 643 (1980)).

Applying Arkansas contract law, *Rutherford* determined there was "substantial evidence of a clear intention to benefit [the] third party" resident. *Id*. (quoting *Perry v. Baptist Health*, 358 Ark. 238, 245, 189 S.W.3d 54, 58 (2004)). This conclusion was further supported by language in the arbitration agreement that stated, in part, that execution of the agreement affects the individual rights of the responsible party. *Id*. Accordingly, the court found that the responsible party is bound individually by the agreement and the resident is a third-party beneficiary with respect to the contractual obligations. *Id*. This reasoning, founded on Arkansas contract law, has been subsequently applied to uphold similar provisions in other third-party beneficiary agreements. *See, e.g.*, *Northport Health Servs. of Ark., LLC v. Cmty. First Tr. Co.*, No. 2:12-CV-02284, 2014 WL 217893 (W.D. Ark. Jan. 21, 2014); *Northport Health Servs. of Ark., LLC v. Medlock*, No. 2:13-CV-02083 (W.D. Ark. May 30, 2014).

Because the language analyzed by the Arkansas federal district court is identical to the language here, application of those principles leads to the same result: persons who signed as

22

"responsible parties" individually contracted with Robinson for the benefit of the residents and the residents are contractually bound as third-party beneficiaries. Moreover, there can be no question that Robinson and the "responsible parties" contracted to benefit the residents. Indeed, the residents' care was the animating purpose behind each agreement. The conclusion that the residents were third-party beneficiaries is easily reached.

In a footnote, the majority casually dismisses the federal court's interpretation *sans* analysis in favor of the court of appeals' approach. *See Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286. But that approach disregards our obligation to consider the sense and meaning of the words within the contract as they are taken and understood in their plain and ordinary meaning. *See First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 169–70, 832 S.W.2d 816, 819 (1992). It likewise disregards our responsibility to view the agreement as a whole and recognize that every word must be taken to have been used for a purpose. *Id*. (internal quotation omitted). In the event of ambiguity, we must reject any construction which neutralizes any provision if the contract can be construed to give effect to all provisions. *Id*.

The majority's adoption of the court of appeals' third-party beneficiary analysis conflicts with these well-established rules of contract interpretation. The majority contends that "[o]ther than the change in nomenclature, there is no real distinction" between agreements signed by "responsible parties," and those signed by "resident representatives" and "legal representatives." By minimizing the distinction between these terms, the majority ignores the terms' plain meaning. Moreover, the definition of "responsible party" includes a legal guardian, someone with power of attorney, "*or* some other individual or family member who agrees to assist

[Robinson] in providing for [the resident's] health, care and maintenance." (emphasis added). To proclaim otherwise renders meaningless the language defining "responsible party."

The *Rutherford* court's interpretation of the third-party beneficiary doctrine in this context is the most faithful application of Arkansas contract law. Accordingly, I would direct the circuit court to compel arbitration of the residents' claims whose arbitration agreements were signed by "responsible parties."

II.

Turning to the issue of mutuality, Robinson contends there is a mutuality of obligations between the parties because the agreement does not specifically exclude any specific category of claims from arbitration. Rather, it imposes a monetary threshold requiring arbitration of all claims exceeding $30,000. Except for the monetary threshold, no other limitations exist as to the types of claims covered by the arbitration agreement. Accordingly, I believe the arbitration agreements satisfy the mutuality requirement.

We have held that a contract must impose mutual obligations on both parties to be enforceable. *See Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 119–20, 27 S.W.3d 361, 366 (2000). If a promise made by either party does not by its terms fix a real liability upon one party, then such promise does not form consideration for the promise of the other party. *Id*. Accordingly, a contract which leaves it entirely optional with one party as to whether they will perform their promise is not enforceable. *Id*. In the context of arbitration, we have recognized that there is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Id*.; *see also E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001).

24

The majority contends that the $30,000 threshold in the arbitration agreements precludes mutuality because the limitation shields Robinson from defending itself in court against most potential claims by residents, while reserving its right to utilize the courts for its claims against residents. But this conclusion turns on speculation about what types of hypothetical claims each party may potentially have against each other and the respective value of those claims. Except for a sole court of appeals' opinion—which is not controlling on this court—the majority cites only to cases where the arbitration agreement expressly excludes specific categories from arbitration. *See, e.g.*, *Harris*, 347 Ark. 132, 60 S.W.3d 436; *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002). That is not the case here, where the *only* limitation is a monetary threshold.

I am not convinced that there is a lack of mutuality in the arbitration agreements. It is certainly plausible that the residents could have a claim against Robinson that would compel arbitration. Indeed, the agreement is very broad in its coverage of claims. Apart from the $30,000 threshold, no limitations exist as to the types of claims that are covered. I therefore conclude that the arbitration agreements satisfy the mutuality requirement and would hold that the agreements are enforceable in relevant part.

Accordingly, I respectfully concur in part and dissent in part.

*Hardin, Jesson & Terry, PLC* (Little Rock), by: *Jeffrey W. Hatfield*, *Kynda Almefty*, and *Carol Ricketts*; and *Hardin, Jesson & Terry, PLC* (Fort Smith), by: *Kirkman T. Dougherty* and *Stephanie I. Randall*, for appellants.

*Campbell Law Firm, P.A.*, by: *H. Gregory Campbell*; and *Reddick Moss, PLLC*, by: *Brian D. Reddick*, for appellees.