Cite as 2020 Ark. App. 18

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-19-234

| | |
|---|---|
| STAP, INC., D/B/A ST. ANDREWS PLACE; KILGORE CONSULTING GROUP, INC.; AND JOSHUA KILGORE<br><br>APPELLANTS<br><br>V.<br><br>LAGATHA SUTTERFIELD, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES SUTTERFIELD, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JAMES SUTTERFIELD<br><br>APPELLEE | **Opinion Delivered:** January 15, 2020<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-18-1270]<br><br>HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br><br><br><br><br><br>AFFIRMED |

**MEREDITH B. SWITZER, Judge**

LaGatha Sutterfield, as special administrator of her husband's estate and on behalf of his wrongful-death beneficiaries, filed a lawsuit against STAP, Inc., d/b/a St. Andrews Place; Kilgore Consulting Group, Inc.; and Joshua Kilgore ("St. Andrews Place"). She asserted claims of negligence, medical malpractice, breach of the admission agreement, and deceptive trade practices. St. Andrews Place filed a motion to compel arbitration and to dismiss the case. The motion was denied, and this appeal followed. St. Andrews Place contends that (1) the arbitration agreement is a valid and enforceable contract under

Arkansas law and (2) the circuit court erred in relying on *Pine Hills Health & Rehabilitation, LLC v. Matthews*, 2014 Ark. 109, 431 S.W.3d 910, and *Regional Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. Our jurisdiction is pursuant to Rule 2(a) of the Arkansas Rules of Appellate Procedure–Civil. We affirm.

I. *Background*

On January 18, 2018, James Sutterfield was admitted to St. Andrews Place, a long-term care facility. His wife, LaGatha Sutterfield, signed the admission agreement on his behalf. "T[racy] Moore" signed the admission agreement on behalf of St. Andrews Place. On the same date, LaGatha also signed the arbitration agreement, albeit on the wrong line, but no one from St. Andrews Place signed it. James died on May 28, 2018. On August 24, 2018, LaGatha filed the underlying action in circuit court, asserting claims of negligence, medical malpractice, breach of the admission agreement, and deceptive trade practices.

On October 18, 2018, the defendants filed a motion to compel arbitration and dismiss the action. At the hearing on the motion, only counsels' arguments were heard, and no witnesses were presented. The circuit court thereafter entered its letter opinion on January 18, 2019. The court ruled that the arbitration agreement was not enforceable and denied the motion to compel and dismiss. The order denying the motion was filed on January 22, and this appeal followed.

The admission agreement provides in pertinent part, under the "Miscellaneous" section:

2

F.   Modifications.   No modification of the terms and conditions of this Agreement shall be valid unless in writing and signed by both parties to this Agreement.

G.   Entire Understanding.   This Agreement including its Attachments and Policies, Procedures, and Statements of Understanding of the Facility received and acknowledged by the Resident/Responsible Party at any time on or after the date of this Agreement all of which are incorporated by reference herein, contains the entire agreement between the parties, and it supersedes all prior agreements, arrangements or oral representations as to all matters relating to the Resident and his or her care at the Nursing Facility.  *Upon execution, the Arbitration Agreement becomes an addendum to and a part of this Agreement.*  This Agreement shall remain in full force and effect for all the Resident's future stays in the Facility, regardless of transfers to hospitals, other institutions or home, until and unless superseded by any new Agreements.

(Emphasis added.)

The arbitration agreement provides in pertinent part:

This Arbitration Agreement is *executed* by _____ (Resident), x *LaGatha Sutterfield* (Resident's Agent/Representative/Responsible Party ("Responsible Party")) and St. Andrews Place (the "Facility") *in conjunction with the Admission Agreement and operates as an addendum to and part thereof*.

It is understood and agreed by the Parties that any and all claims, disputes, and controversies ("Claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process.

. . . .

The Resident/Responsible Party understands:

(1)   he/she has the right to seek legal counsel concerning this Arbitration Agreement; and

(2)   execution of this Arbitration Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility.

3

There are numerous other healthcare providers in the State and the Resident is not required to use the Facility for his/her needs;

(3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident/Responsible Party within thirty (30) days of signature. If not rescinded within thirty (30) days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

. . . .
For Facility
Date: _01/18/18_
Authorized Representative Signature: _x LaGatha Sutterfield_

LaGatha signed in the wrong place, but it is undisputed that no facility representative signed the agreement.

For its first point of appeal, St. Andrews Place contends the circuit court erred in concluding the arbitration agreement was not valid and enforceable because (a) an arbitration agreement does not have to be signed by both parties to be enforceable, (b) St. Andrews Place manifested assent to the arbitration agreement, and (c) both parties are obligated to submit their claims to arbitration pursuant to the terms of the arbitration agreement. For its second point of appeal, St. Andrews Place contends that the circuit court erred in relying on *Matthews* and *Henry*, *supra*, in denying the motion. These points are so interrelated that they can best be discussed together. In deciding this case, the circuit court determined that the arbitration agreement was unenforceable for lack of "mutuality of assent" and cited *Matthews* and *Henry* as support for its decision. The lack of a facility signature on the arbitration agreement was pivotal. In *Matthews*, there was no

4

facility signature on the arbitration agreement either. The arguments raised by the appellants in *Matthews* are remarkably similar to those raised here.

## II. *The Matthews Case*

The appellants in *Matthews* argued that the absence of their representative's signature did not render the arbitration agreement unenforceable because their conduct manifested assent: preparing a form arbitration agreement and admission agreement, presenting a nonmandatory offer of arbitration to incoming residents, retaining both agreements, and attempting to enforce the arbitration agreement. In addition, they focused on the arbitration agreement's language: providing that the resident, not the facility, could rescind the agreement within thirty days of signing; advising that the resident might want to consult an attorney; and a certification block above the resident's signature (but not the facility's) that the "undersigned" had read and understood the agreement and was either the resident or someone authorized by the resident to execute the agreement. *Id.* They also focused on the following language in the admission agreement: "Resident acknowledges that disputes arising out of this Agreement...may be submitted to arbitration, if the Resident elects to do so, by signing a separate agreement executed between the Nursing Facility and the Resident." *Id.* at 6, 431 S.W.3d at 914. The appellants in *Matthews* further argued that "signing" is not synonymous with "executing" an agreement; that "executing" means "commencement of the contract"; and that ambiguities must be resolved in favor of arbitration. Finally, they argued that the facility made an offer that was

accepted, demonstrating mutual assent and a valid contract. *Id.* The arguments made in *Matthews* are virtually identical to those raised here by St. Andrews Place.

In resolving those issues in *Matthews*, our supreme court explained that whether there was an enforceable arbitration agreement was a matter of contract construction, and it was therefore necessary to look at the agreement's language, apply contract-law principles, and determine as a matter of law the construction and legal effect of the agreement. The essential elements of a contract are competent parties, subject matter, legal consideration, mutual agreement, and mutual obligations. *Id.* Both parties must manifest assent to the particular terms of the contract. *Id.* The reviewing court employs an objective test for determining mutual assent, looking for objective indicators of agreement and not subjective opinions. *Id.*

The supreme court noted that no testimony was presented at the hearing in *Matthews*, and no facility representative signed the arbitration agreement to indicate mutual assent. Manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act. *Id.* "Moreover, a 'written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein.'" *Id.* at 7, 431 S.W.3d at 915 (quoting *Parker v. Carter*, 91 Ark. 162, 167, 120 S.W. 836, 838 (1909)). Applying those contract principles to the *Matthews* facts, the supreme court reasoned:

> Though appellants assert that their conduct indicated Pine Hills's manifestation of its assent to the Arbitration Agreement, there was no testimony presented concerning any conduct that would have manifested assent. Appellee cites

6

provisions in the Arbitration Agreement that they assert evidence Pine Hills's manifestation of its assent: the provisions stating that the Responsible Party could rescind the Arbitration Agreement and the certification that he read and understood the Arbitration Agreement. This language, however, does not establish Pine Hills's manifestation of its assent. Rather, it establishes only the Responsible Party's manifestation of assent.

Further, appellants' reliance on language in the Admission Agreement—a separate agreement signed by a Pine Hills representative two days after Matthews had signed the Arbitration Agreement—does not illuminate whether Pine Hills also manifested its assent to the Arbitration Agreement.

*Id.* at 7–8, 431 S.W.3d at 915. The *Matthews* court noted other language in the agreements, and then stated, "While appellants assert that 'signing' is not synonymous with 'execut[ing]' an agreement and that 'executed' means 'commencement of the contract,' we observe that no testimony was presented regarding any acts that would have indicated the 'commencement of the contract.'" *Id.* at 8, 431 S.W.3d at 915–16. The *Matthews* court employed an objective test to determine mutual assent and held that the arbitration agreement did not establish that Pine Hills manifested its assent to the arbitration agreement; therefore, the agreement was not enforceable.

### III. *The Instant Case*

St. Andrews Place attempts to distinguish *Matthews* and *Henry* from the instant case. St. Andrews Place argues that in the instant case, the admission agreement and the arbitration agreement were entered into on the same day; that the admission agreement includes a clear incorporation-by-reference clause, which demonstrated that St. Andrew Place's intended for all admission documents to be considered as a single agreement and manifested assent to the terms of those documents included in the single agreement,

7

making it clear that St. Andrews Place intended to be bound by the arbitration agreement even if its representative did not sign the agreement. It further argues that unlike the situation in *Henry*, the arbitration agreement here does not exclude from its scope claims for nonpayment or other breaches of the admission agreement by the resident; instead St. Andrews Place relinquished its own ability to pursue relief through the courts, indicating mutuality of obligation. We do not find these distinctions persuasive.

Our review of the facts in the instant case convinces us that its similarities to *Matthews* are compelling and control the outcome here. The distinctions urged by St. Andrews Place are not significant enough to require a different analysis. The facility did not sign the arbitration agreement. At the hearing on the motion to compel and dismiss, no testimony or other evidence was presented. The arbitration agreement was an optional separate agreement, and St. Andrew Place's assent to the admission agreement did not, in and of itself, constitute assent to the separate arbitration agreement. The admission agreement itself conditions incorporation of the arbitration agreement "upon execution" of the arbitration agreement, and the arbitration agreement contained signature blocks for both the facility and the resident. The admission agreement also provided: "Modifications. No modification of the terms and conditions of this Agreement shall be valid unless in writing and signed by both parties to this Agreement." Moreover, the *Matthews* court also implicitly rejected the following arguments made here—that the facility's presentation of the arbitration agreement constituted an offer that was accepted by the resident's representative, creating a binding contract; that the arbitration agreement

8

could be rescinded by the resident, but not St. Andrews Place, within thirty days; and that signing the admission agreement, incorporating by reference the arbitration agreement, manifested assent.

We conclude that our supreme court's decision in *Matthews* controls the outcome here. Accordingly, we affirm the circuit court's denial of the motion to compel arbitration and dismiss the action.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Benjamin D. Jackson* and *Lauren S. Grinder*, for appellants.

*Reddick Moss, PLLC*, by: *Matthew D. Swindle* and *Robert W. Francis*, for appellee.