RAYMOND R. ABRAMSON, Judge
Hickory Heights Health and Rehab, LLC; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton jointly appeal the Pulaski County Circuit Court order denying their *136 motion to compel arbitration. On appeal, they argue that the circuit court erred in denying their motion.[1] We affirm.
Hickory Heights is a nursing-home facility where Ida Adams is currently a resident. On November 6, 2017, Ida's son and guardian, Lemarion Adams, filed suit on her behalf against Hickory Heights, alleging claims for negligence, medical malpractice, breach of contract, and a violation of the Arkansas Deceptive Trade Practices Act.
In response, on December 29, 2017, Hickory Heights filed a motion to compel arbitration and stay the proceedings. It attached an arbitration agreement signed by Lemarion at Ida's admission to Hickory Heights. The arbitration agreement provides in part as follows:
Signing this Arbitration Agreement, as an addendum to and part of the Admission Agreement is a condition of admission . Once signed, this Arbitration Agreement governs the resolution of claims.
....
It is understood and agreed by Facility and Resident and/or responsible party that any and all claims, disputes, and controversies arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident that would constitute a cause of action in a court of law that the Facility may have now or in the future against you or any of your representatives, or that you or any of your representatives may have now or in the future against the Facility, as defined above, and involving an amount of or greater than thirty-thousand dollars and no cents ($30,000) shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process.
....
By signing this agreement, the Parties acknowledge their understanding and agreement that all disputes will be resolved by binding arbitration:
THE PARTIES FURTHER ACKNOWLEDGE THAT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AND ARE INSTEAD ACCEPTING THE USE OF ARBITRATION.
On January 19, 2018, Lemarion filed a response and argued that the arbitration agreement was invalid for two reasons: (1) the agreement lacked mutuality of obligation among the parties because it allowed Hickory Heights to sue in court for the types of claims it would likely have against residents, but it required injured residents to arbitrate their likely claims; and (2) the agreement was unconscionable and therefore unenforceable as a matter of law.
On January 26, 2018, the circuit court entered an order without written opinion denying Hickory Heights' motion to compel. Hickory Heights timely appealed the order to this court. On appeal, Hickory Heights argues that the circuit court erred in denying its motion to compel arbitration because the agreement mutually obligated the parties and was not unconscionable.
When a circuit court denies a motion to compel arbitration without expressly stating the basis for its ruling, that ruling encompasses the issues presented to the circuit court by the briefs and arguments of the parties.
*137 Asset Acceptance, LLC v. Newby , 2014 Ark. 280, 437 S.W.3d 119. On appeal, we review a circuit court's order denying a motion to compel arbitration de novo on the record. HPD, LLC v. TETRA Techs., Inc. , 2012 Ark. 408, 424 S.W.3d 304.
We first address Hickory Heights' argument that the arbitration agreement mutually obligates the parties. The parties in this matter do not dispute that the Federal Arbitration Act (FAA) applies in this case. Congress enacted the FAA, 9 U.S.C. §§ 1 - 16 (2006), to overcome judicial resistance to arbitration. Buckeye Check Cashing, Inc. v. Cardegna , 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. Preston v. Ferrer , 552 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008)(citing Southland Corp. v. Keating , 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ). So, too, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. Asset Acceptance , 2014 Ark. 280, 437 S.W.3d 119. Although an arbitration provision is subject to the FAA, courts look to state contract law to decide whether the parties' agreement to arbitrate is valid. Reg'l Care of Jacksonville, LLC v. Henry , 2014 Ark. 361, 444 S.W.3d 356.
Our supreme court has observed that a threshold inquiry is whether a valid agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. See Alltel Corp. v. Sumner , 360 Ark. 573, 203 S.W.3d 77 (2005). Our supreme court has said that the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. Bank of the Ozarks, Inc. v. Walker , 2014 Ark. 223, 434 S.W.3d 357.
In Arkansas, the element of mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. The Money Place, LLC v. Barnes , 349 Ark. 411, 78 S.W.3d 714 (2002). A contract, therefore, that leaves it entirely optional with one of the parties as to whether that party will perform the promise would not be binding on the other. Showmethemoney Check Cashers, Inc. v. Williams , 342 Ark. 112, 27 S.W.3d 361 (2000). There is no mutuality of obligation when one party uses an arbitration agreement to shield itself from litigation while reserving to itself the ability to pursue relief through the court system. Cash in a Flash Check Advance of Ark., L.L.C. v. Spencer , 348 Ark. 459, 74 S.W.3d 600 (2002). Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. E-Z Cash Advance, Inc. v. Harris , 347 Ark. 132, 60 S.W.3d 436 (2001).
In this case, Hickory Heights argues that the agreement mutually obligates the parties to submit any disputes to arbitration when the amount in controversy is greater than $30,000. It maintains that the agreement does not specifically exclude a type of claim from its scope nor does it require only one party to forgo its right to the court system.
Lemarion argues that the agreement shields Hickory Heights from litigation while reserving its ability to pursue relief against its residents through the court system. Specifically, he asserts that the agreement relegates residents' likely claims-tort claims-to binding arbitration *138 but allows Hickory Heights to retain the right to litigate its likely claims-matters for less than $30,000, such as billing and collection matters-through the court system. He points out that the maximum debt that Ida would likely accumulate to Hickory Heights is $9,400.[2] He further notes that the admission agreement disclaims all liability for property not delivered to an employee for safekeeping and that Hickory Heights reserves the right to refuse the safekeeping of personal property over $50.
In making his argument, Lemarion relies on Regional Care , 2014 Ark. 361, 444 S.W.3d 356, and E-Z Cash , 347 Ark. 132, 60 S.W.3d 436. In Regional Care , the arbitration agreement provided for arbitration of any dispute arising out of the nursing home residency but preserved the facility's ability to sue in court for disputes concerning billing or collection services. Id. Our supreme court held that the agreement lacked mutual obligation because, by excluding any billing or collection disputes, the nursing home did not bind itself to the same obligations that it imposed on the resident. Id.
In E-Z Cash , our supreme court held that an arbitration clause lacked mutual obligation because the clause allowed the check casher the right to all civil remedies, including a return-check fee, court costs, and attorney's fees, when a check was returned, but limited the customer to arbitration. E-Z Cash , 347 Ark. 132, 60 S.W.3d 436. Although the arbitration clause allowed both parties access to small-claims court, the court held that any argument that this provision supplied the necessary mutuality was disingenuous in light of the other provision allowing the check casher to go to court for returned checks because "[t]aking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that E-Z Cash would be required to submit to arbitration." Id. at 141, 60 S.W.3d at 442. "In other words, mutuality was deemed lacking because the check casher could litigate the only kind of claim that it might have against a borrower." Reg'l Care , 2014 Ark. 361, at 8, 444 S.W.3d at 361.
In the case at bar, we also conclude that the arbitration agreement lacks mutuality. As in E-Z Cash , Hickory Heights' argument that the agreement supplied the necessary mutuality is disingenuous. Even though the arbitration agreement did not explicitly exclude a type of claim from its scope or require only one party to forgo its right to the court system, the arbitration provision was obviously drafted to shield Hickory Heights from defending itself in the court system against the majority of residents' potential claims while maintaining its right to utilize the court system for its likely claims against residents. Our supreme court has held that such arbitration agreements lack mutuality. See Reg'l Care , 2014 Ark. 361, 444 S.W.3d 356 ; E-Z Cash , 347 Ark. 132, 60 S.W.3d 436. Accordingly, it is not a valid and enforceable arbitration agreement. Because no valid arbitration agreement exists due to lack of mutuality of obligation, we need not address Hickory Heights' unconscionability argument. See *139 Reg'l Care , 2014 Ark. 361, 444 S.W.3d 356.[3]
Affirmed.
Virden and Hixson, JJ., agree.

For simplicity, we will hereinafter refer to the appellants jointly as "Hickory Heights."

To calculate that sum, Lemarion cites the admission agreement, which requires Ida to pay the facility's monthly bill in advance on the first day of the month. If the resident fails to pay by the tenth day, Hickory Heights can discharge the resident thirty days later. Thus, Lemarion asserts that Ida's account can remain delinquent for only forty days. Hickory Heights' daily rate is $235. Accordingly, Lemarion multiplied $235 by 40, which equals $9,400.

In its brief, Hickory Heights relies on Diversicare Leasing Corp. v. Nowlin , No. 11-CV-1037, 2011 WL 5827208 (W.D. Ark. Nov. 18, 2011). In that case, the federal district court applied Arkansas law and held that an arbitration agreement that required all claims in excess of $15,000 be submitted to arbitration satisfied the mutual-obligation requirement. While our supreme court often looks to federal court decisions, they are not precedent and not binding on our supreme court. See Sheridan v. State , 368 Ark. 510, 247 S.W.3d 481 (2007). We further note that the Diversicare decision preceded our supreme court's decision in Regional Care .