Cite as 2022 Ark. App. 103

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-21-129

| | |
|---|---|
| NORTHPORT HEALTH SERVICES OF ARKANSAS, LLC, D/B/A PARIS HEALTH AND REHAB CENTER; AND NORTHPORT HEALTH SERVICES, INC.<br>APPELLANTS<br><br>V.<br><br>THOMAS CHANCEY, GUARDIAN OF THE ESTATE AND PERSON OF LUCY CHANCEY, AN INCAPACITATED PERSON<br>APPELLEE | Opinion Delivered March 2, 2022<br><br>APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 42PCV-19-106]<br><br>HONORABLE DAVID H. MCCORMICK, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

This is an interlocutory appeal from a denial of a motion to compel arbitration. Northport Health Services of Arkansas, LLC, d/b/a Paris Health and Rehab Center; and Northport Health Services, Inc. (collectively Northport), appeal an order of the Logan County Circuit Court denying a motion to compel arbitration based on its finding that the arbitration agreement lacked mutuality of obligations. Northport argues that the circuit court erred in refusing to enforce the valid arbitration agreement. We affirm.

On or about September 24, 2018, Lucy Chancey was admitted to Paris Health and Rehab Center, a nursing-home facility. She resided there until May 12, 2019. Thomas

Chancey, who is Lucy's son, signed the admission agreement as the "Responsible Party."[1]

Under the section identifying the relationship of the resident to the responsible party,

Thomas is identified as "Relative" and "Son." The admission agreement contained an

arbitration provision, which provides as follows:

> 8. <u>Dispute Resolution Program, Arbitration Agreement, and WAIVER OF JURY TRIAL.</u>
> (Read Carefully)
>
> A. The Program
>
> This Agreement creates a dispute resolution program (the "Program") which shall govern the resolution of any and all claims or disputes that would constitute a cause of action in a court of law that Facility may have now or in the future against you or any of your representatives, or that you or any of your representatives may have now or in the future against Facility, any parent or subsidiary of Facility, any company affiliated with Facility, or any of Facility's officers, directors, managers, employees, or agents acting in such capacity (hereinafter referred to as "Disputes") or that any other person may have arising out of the residency. The Disputes whose resolution is governed by the Program shall include, but not be limited to, claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance. Notwithstanding the foregoing, the Program shall not govern (i) any grievance brought either formally or informally under the Facility's grievance policy or with an appropriate state or federal agency (ii) an appeal to the appropriate state or federal entity regarding an involuntary transfer or discharge (iii) any complaint with an appropriate state or federal agency concerning the Facility's compliance with applicable regulations governing care, facility services, or residents' rights (iv) any complaint with an appropriate state or federal agency concerning resident abuse, neglect, misappropriation of resident property or non-compliance with advance directive requirements or (v) any claim or dispute involving solely a monetary

---

[1]Lucy executed a durable power of attorney in favor of Thomas on July 14, 2014. The powers included the authority to sign any forms necessary for admitting Lucy to a hospital.

claim in an amount less than $25,000, and any such claim or dispute shall not be deemed a Dispute hereunder.

B. Arbitration

All Disputes covered under the Program between you and the Facility shall be resolved by binding arbitration. Arbitration is a procedure in which the parties submit a Dispute to one or more mutually selected, impartial persons for a final and binding decision. The parties expressly agree to settle all Disputes by binding arbitration rather than by a judge, jury, or administrative agency.

Arbitration is a complete substitute for a trial by a judge or a jury. The parties hereby specifically waive their rights to a jury trial. Only Disputes that would constitute a legally cognizable cause of action in a court of law may be arbitrated.

**THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION.**

On October 28, 2019, Thomas, as Lucy's guardian, filed a complaint against Northport alleging claims of negligence, medical negligence, and a violation of long-term care residents' rights.[2] The complaint alleged that Northport had failed to discharge its obligations of care to Lucy and that as a result, she suffered serious injuries, extreme pain, suffering, and mental anguish. Northport filed an answer and affirmatively pleaded that Lucy's claims are barred from being litigated in court by virtue of the arbitration agreement.

---

[2]Lucy died intestate on December 19, 2020, during the course of the proceedings. After being appointed as the administrator of her estate, Thomas filed a motion in this court to be substituted as the real party in interest pursuant to Rule 12 of the Arkansas Rules of Appellate Procedure–Civil, which was granted on December 1, 2021.

Northport filed a motion to compel arbitration on June 26, 2020, arguing that (1) the Federal Arbitration Act governs arbitration in this case and preempts any Arkansas law to the contrary; and (2) the arbitration clause is valid and enforceable. Thomas responded, in part, that the arbitration agreement was invalid and unenforceable due to a lack of mutuality of obligations as required for a valid contract in Arkansas. Thomas alleged, in part, that the provision in the arbitration agreement provides that "any claim or dispute involving solely a monetary claim in an amount less than $25,000, and any such claim or dispute shall not be deemed a Dispute hereunder." He contended that this provision impermissibly shields Northport from litigation and lacks mutuality of obligations because it specifically designated all of Northport's likely claims against Lucy, such as collection of money due to nonpayment, as not subject to binding arbitration but subjected all of Lucy's likely claims arising in tort to binding arbitration.

On November 24, 2020, the circuit court entered an order finding that the arbitration agreement is invalid and unenforceable because it lacks mutuality of obligations based on *Country Club Gardens, LLC v. Alexander*, 2020 Ark. App. 239, 599 S.W.3d 363. Northport filed a notice of appeal on December 23, 2020.[3]

We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Progressive Eldercare Servs. - Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379. While we are

---

[3]An order denying a motion to compel arbitration is immediately appealable pursuant Rule 12(a)(2) of the Arkansas Rules of Appellate Procedure–Civil (2019).

not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Id.*

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16; however, we look to state contract law to decide whether an agreement to arbitrate is valid. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, at 5, 586 S.W.3d 624, at 629. In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered: (1) whether a valid agreement to arbitrate between the parties exists and, (2) if such an agreement exists, whether the dispute falls within its scope. *Id.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.* We have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* at 6, 444 S.W.3d at 629–30. Northport, as the proponent of the arbitration agreement, has the burden of proving these essential elements. *Id.*

Mutuality of contract means that "an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Id.* at 14, 586 S.W.3d at 633–34. There is no mutuality of obligation when one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Id.* Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *Id.*

In this case, Northport argues that the circuit court erred "in applying a bright line rule that arbitration agreements containing monetary thresholds are per se invalid instead of determining whether mutuality of obligations is satisfied" in the arbitration agreement in this case. Northport contends that had the circuit court properly applied the standard set forth in *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 598 S.W.3d 1, the arbitration agreement in this case would establish mutuality of obligations based on ordinary contract principles. Northpoint suggests that all parties are clearly and unequivocally required to submit any disputes to arbitration where the amount in controversy is more than $25,000, and all parties are able to pursue disputes involving an amount in controversy less than $25,000 by any legal means, including by lawsuit or other legal process. Northport states that pursuant to *Jorja Trading*, it would be a violation of the FAA to speculate as to whether one party to the agreement would receive a greater benefit than another so as to invalidate the agreement.

*Jorja Trading* involved an installment-sales contract for the purchase of a vehicle that contained an arbitration provision. When the purchasers failed to pay, they also surrendered the vehicle. The car was sold and the purchasers were credited, but a balance remained on their account. Jorja Trading filed a complaint in the small-claims division of district court seeking to recover the remaining balance, and the district court entered a judgment in its favor. The purchasers appealed the district court decision to the circuit court and counterclaimed, alleging usury and UCC violations; they also sought class certification. Jorja Trading filed a motion to compel arbitration, which was denied based on lack of mutuality of obligations in three areas—it reserved the right of both parties to seek self-help remedies,

6

it provided that both parties waive class action-action lawsuits, and it allowed Jorja Trading to reject the purchasers' selection of an arbitrator. This court affirmed the denial of the motion to compel, but the supreme court reversed on a petition for review.

The supreme court stated that although both parties agreed to arbitrate any disputes that could not be resolved in small-claims court and agreed on the requirements of arbitration should it occur, the circuit court found that the three provisions within the agreement destroyed mutuality because it could not conceive of scenarios in which the provisions applied bilaterally. The supreme court disagreed, stating that it "has not required that every provision within a contract be bilateral. We therefore cannot require that every provision in an arbitration agreement be bilateral without violating the FAA because doing so would hold arbitration agreements to a more stringent analysis than other contracts." *Jorja Trading*, 2020 Ark. 133, at 5, 598 S.W.3d at 6. Recognizing that both parties had bound themselves to arbitrate, the supreme court addressed each of the three provisions and concluded that none destroyed mutuality. The court stated that under Arkansas contract law, mutuality of obligations "does not require a precisely even exchange of identical rights and obligations between the contracting parties." *Id.* Ultimately, the court concluded that none of the three provisions destroyed mutuality of obligations.

Northport urges that we change our analysis used in prior nursing-home cases in light of *Jorja Trading*. However, one week after the supreme court handed down its decision in *Jorja Trading*, this court addressed the mutuality-of-obligations element in an arbitration clause related to a nursing home admission agreement. *See Country Club Gardens, LLC v.*

7

*Alexander*, 2020 Ark. App. 239, 599 S.W.3d 363 (petition for review denied). In *Alexander*, Lake Hamilton Health appealed the denial of its motion to compel arbitration based on lack of mutuality of obligations. Lake Hamilton Health argued that the arbitration agreement satisfied the element of mutual obligations because both parties were able to submit any dispute to arbitration when the amount in controversy was greater than $30,000 and were able to pursue amounts less than $30,000 by a lawsuit or any other legal process. In affirming the denial, we relied on *Hickory Heights Health & Rehab, LLC v. Adams*, 2018 Ark. App. 560, 566 S.W.3d 134, a case in which the same argument was raised. In *Adams*, we held:

> Even though the arbitration agreement did not explicitly exclude a type of claim from its scope or require only one party to forgo its right to the court system, the arbitration provision was obviously drafted to shield Hickory Heights from defending itself in the court system against the majority of residents' potential claims while maintaining its right to utilize the court system for its likely claims against residents. Our supreme court has held that such arbitration agreements lack mutuality. *See Reg'l Care [of Jacksonville, LLLC v. Henry]*, 2014 Ark. 361, 444 S.W.3d 356; *E-Z Cash [Advance Inc. v. Harris]*, 347 Ark. 132, 60 S.W.3d 436 [2001]. Accordingly, it is not a valid and enforceable arbitration agreement.

*Adams*, 2018 Ark. App. 560, at 7, 566 S.W.3d at 138 (affirming the denial of the motion to compel arbitration).

We further noted in *Alexander* that our supreme court in *Phillips*, *supra*, addressed the question of whether the arbitration agreements containing the same language as those in *Adams* lacked mutuality of obligations. The supreme court rejected the nursing home's argument that the monetary threshold applies equally to the parties. Citing this court's decision in *Adams* with approval, the supreme court in *Phillips* concluded that the arbitration

8

agreements containing the $30,000 limitation lack mutuality of obligations. The supreme

court explained:

> As in *Adams*, we believe that the arbitration agreements here serve to shield Robinson
> from defending itself in the court system against the majority of potential claims by
> residents, while reserving its right to utilize the court system for its likely claims.
> Accordingly, these arbitration agreements are not valid or enforceable, and the circuit
> court correctly denied the motions to compel as to these agreements.

*Phillips*, 2019 Ark. 305, at 16–17, 586 S.W.3d at 635.

As a result of the supreme court's holding in *Phillips* that cited our decision in *Adams*

with approval, this court affirmed the denial of the of the nursing home's motion to compel

arbitration in *Alexander*, holding that the arbitration agreement lacked mutuality of

obligations, was invalid, and was unenforceable. Moreover, in *Alexander*, we recognized the

supreme court's decision in *Jorja Trading*, which had been handed down one week earlier,

noting:

> Last week, our supreme court handed down an opinion that addressed the
> mutuality-of-obligations element in the context of an arbitration clause within an
> installment-sales contract. *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, [598 S.W.3d 1].
> There, the supreme court reversed and remanded the circuit court's order denying
> the appellant's motion to compel, holding that the installment-sales contract satisfied
> the element of mutuality of obligations. We note that the arbitration clauses at issue
> in *Jorja Trading* (self-help, class-action waiver, and arbitrator selection) are not the same
> as the provisions in question within the arbitration agreement in the case at bar.
> Further, as set forth above, the supreme court's holding in *Phillips*, on which we rely,
> is directly on point and was not overruled in *Jorja Trading*.

*Alexander*, 2020 Ark. App. 239, at 7 n.2, 599 S.W.3d at 367 n.2.

Northport argues that pursuant to *Jorja Trading*, the reasoning of *Adams*, *Phillips*, and

*Alexander* is not controlling. Although acknowledging that the *Jorja Trading* decision did not

expressly overrule *Phillips*, Northport contends that the reasoning applied in those cases cannot be reconciled, and the opinions in those cases did not apply the reasoning in *Jorja Trading*. Northport further states that the circuit court looked beyond the language of the agreements and made assumptions as to the value and likelihood of potential claims by the parties, which violates the FAA and is preempted by the FAA.

We obviously cannot ignore the fact that our supreme court in *Jorja Trading* did not overrule its decision in *Phillips*. Northport essentially asks this court to overrule the supreme court's decision in *Phillips*; however, we must follow the precedent set by the supreme court and are powerless to overrule its decisions. *See, e.g.*, *Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009).

Northport further argues that there is mutuality of obligations even using the standard set forth in *Adams*, *Phillips*, and *Alexander*. It argues that the agreement in those cases prevented a resident's debt from accumulating to greater than $30,000, and no such language exists in the present case. Northport states that if a resident's debt accumulates to greater than $25,000, it is bound to arbitrate any action for recovery. Northport also suggests that there are other scenarios in which the nursing home could have a dispute against a resident that could be in excess of the threshold amount, "such as a cause of action for property damage." Northport distinguishes the arbitration agreement at issue from those in *Adams*, *Phillips*, and *Alexander*, stating that the arbitration provision is part of the larger admission agreement as opposed to a separate contract and involves a lower threshold amount of $25,000.

10

These distinctions, however, do not alter the underlying basis of the decisions in those cases. Each of those decisions hinged on the fact that the monetary threshold value serves to shield the nursing home from "defending itself in the court system against the majority of potential claims by residents, while reserving its rights to utilize the court system for its likely claims." *Phillips*, 2019 Ark. 305, at 16-17, 586 S.W.3d at 635. The $5000 difference does not change the reasoning that the bulk of the residents' claims would likely exceed this amount, while the bulk of the nursing home's claims would likely fall under this amount. The argument that the nursing home might have a claim in excess of the threshold limit has been addressed and rejected. In *Phillips*, the nursing home argued that the resident could potentially have a claim against a resident greater than $30,000 aside from the daily room rate, such as in cases involving private nursing or special equipment. It also argued that there were situations in which the resident could potentially have a claim that would not be subject to arbitration, such as in the case of a property loss. *Phillips*, 2019 Ark. 305, at 15–16, 586 S.W.3d at 634. The nursing home in *Alexander* made a similar argument that there were situations in which the nursing home could have a claim against a resident that has a value in excess of $30,000 (i.e., a billing dispute), and a resident could have a claim against the nursing home that has a value less than $30,000 (i.e., a personal-injury claim, a billing dispute, or a claim for lost or stolen property). This court rejected the argument, acknowledging that a similar argument had been rejected in *Adams*.

In light of our supreme court's decision in *Phillips*, we hold that the arbitration agreement in the present case is invalid and unenforceable because it lacks mutuality of

11

obligations. Therefore, we hold that the circuit court did not err in denying Northport's motion to compel arbitration.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Grayson & Grayson, P.A.*, by: *Keith L. Grayson* and *Melanie L. Grayson*; and *Law Office of Craig L. Cook*, by: *Craig L. Cook*, for appellee.