Cite as 2024 Ark. App. 80

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-517

| | |
|---|---|
| HOT SPRINGS NURSING AND REHABILITATION - A WATERS COMMUNITY, LLC; THE WATERS OF ARKANSAS MASTER TENANT, LLC; CATHERAN ATLAS, INDIVIDUALLY AND IN HER CAPACITY AS THE ADMINISTRATOR OF HOT SPRINGS NURSING AND REHABILITATION - A WATERS COMMUNITY, LLC; JOHN DOE DEFENDANTS 1 THROUGH 5, UNKNOWN DEFENDANTS<br><br>APPELLANTS<br><br>V.<br><br>KELLY C. HOOKER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PATRICIA ANN GREESON, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF PATRICIA ANN GREESON<br><br>APPELLEE | Opinion Delivered February 7, 2024<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-20-730]<br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

This is an interlocutory appeal from an order of the Garland County Circuit Court denying a motion to compel arbitration. Appellants are Hot Springs Nursing and Rehabilitation - A Waters Community, LLC; The Waters of Arkansas Master Tenant, LLC; Catheran Atlas, individually and in her capacity as the administrator of Hot Springs Nursing

and Rehabilitation – a Waters Community, LLC; and John Doe defendants 1 through 5, unknown defendants (the "Facility"). Appellee is Kelly C. Hooker ("Hooker"), as personal representative of the estate of Patricia Ann Greeson, deceased, and on behalf of the wrongful death beneficiaries of Patricia Ann Greeson. The Facility contends that the circuit court erred in denying its motion to compel arbitration, despite the existence of a valid and enforceable arbitration agreement and Hooker's failure to establish any valid defense to enforcement of the contract. We affirm.

I. *Background Facts*

On August 9, 2019, Patricia Ann Greeson ("Greeson") was admitted to the nursing home facility. Prior to her admission, Hooker—Greeson's daughter and power of attorney—went to the facility and signed admission documentation that included an arbitration agreement. Greeson lived at the nursing home for a period of five days—until August 14—and passed away on October 3.

The arbitration agreement states, in part, as follows:

The Resident's **Representative** may be an "**Agent,**" a "**Guardian**," or a "**Surrogate**."

An "**Agent**" is a person designated by Resident in a document such as a living will or a durable power of attorney for health care who may make health care decisions on behalf of the Resident.

A "**Guardian**" is a person appointed by the court as guardian or conservator of the Resident to make health care decision(s) on behalf of the Resident.

A "**Surrogate**" is a person, other than an Agent or a Guardian, that has authority to make health care decisions on behalf of the Resident.

2

To be effective, this Agreement must be signed by the Facility and the Resident's Representative.

. . . .

If the Resident is unable to sign or fully understand this Agreement, and if the Representative is a Surrogate, then the Surrogate must also sign, in his or her own individual capacity, the following:

I, [Patricia Greeson], hereby certify the following to be true:

- Resident is unable to understand the significant benefits, risks, and alternatives to admission to the Facility and to make and communicate health care decisions;
- Either Resident has no Agent or Guardian, or such Agent or Guardian is not reasonably available;
- I have exhibited, and will continue to exhibit, special care and concern for the Resident; I am familiar with Resident's personal values; I am reasonably available to make health care decisions in the best interest of Resident; and I am willing to act as Resident's Surrogate.

The arbitration agreement is signed by Hooker on the representative's signature line and relationship to resident is identified as "POA." There was no witness identified on the signature page; however, Megan Dempsey signed on behalf of the nursing home.

On October 24, 2017, Greeson executed a statutory power of attorney ("POA") authorizing Hooker to make decisions regarding her property. The POA states in pertinent part:

Your agent will be able to make decisions and act with respect to your property (including your money) whether or not you are able to act for yourself. . . . This power of attorney does not authorize the agent to make health-care decisions for you.

Further, the POA included a general authority section wherein Greeson could grant Hooker authority to act for her with respect to certain subjects as defined in the Uniform Power of Attorney Act, Arkansas Code Title 28, Chapter 68, by initialing each subject included in the

3

agent's general authority. Greeson provided one set of initials that are written above the line for "all preceding subjects," which includes claims and litigation, but the initials are technically written through the provision labeled "benefits from governmental programs or civil or military service."

On June 15, 2020, Hooker, as the personal representative of Greeson's estate, filed suit against the Facility asserting claims of negligence for the injuries and wrongful death of her mother. Specifically, the complaint alleged that Greeson sustained numerous injuries, including falls, multiple fractures to her left humerus and ribs, a head injury, right nasal bone fracture, bruising, inadequate and inaccurate assessments, a UTI, and severe pain and suffering. Hooker argues that these injuries resulted in the wrongful death of Greeson. On July 20, the Facility filed an answer asserting the defense of arbitration, and on January 25, 2022, the Facility moved to compel arbitration. Hooker opposed the motion on three grounds: (1) she lacked the authority to bind Greeson to the arbitration agreement; (2) the arbitration agreement lacked mutuality of obligations under Arkansas contract law; and (3) the arbitration agreement is unconscionable.

In response, the Facility argued that Hooker had authority to make health care decisions on Greeson's behalf; that Hooker had the authority to bind Greeson to the arbitration agreement; that the arbitration agreement does not lack mutual obligations; and that the agreement is not unconscionable. The circuit court held a hearing on the motion, and on April 21, the court entered its order denying the Facility's motion to compel arbitration, finding that Hooker lacked authority to bind Greeson to the agreement and that

4

the contract lacked mutuality. The Facility filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2023). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669.

Arbitration is simply a matter of contract between parties. *Hickory Heights Health & Rehab., LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286. Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.* at 5, 557 S.W.3d at 290. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*

## III. *Points on Appeal*

On appeal, the Facility argues the following: (1) the circuit court erred in denying the motion to compel on the basis of lack of mutuality of obligation and (2) the circuit court erred in denying the motion to compel on the basis of lack of authority. In the alternative, the Facility argues that this court should reverse and remand to the circuit court with an instruction to conduct a jury trial on the motion.

5

IV. *Discussion*

When a court is asked to compel arbitration, it must decide two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, whether the dispute falls within its scope. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119. The threshold issue—and the one that is dispositive in this case—is whether there was a valid arbitration agreement.

Despite an arbitration agreement being subject to the Federal Arbitration Act ("FAA"), this court looks to state contract law to determine if the parties' agreement is valid. *GGNSC Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645. The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Bank of Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357. Thus, in order to have a valid agreement to arbitrate, there must have been mutual agreement with notice as to the terms and subsequent assent. *Id.* The Facility, as the proponent of the arbitration agreement, has the burden of proving these essential elements. *See Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, at 5, 586 S.W.3d 624, 629.

A. Mutuality of Obligations

First, the Facility contends that the circuit court erred in denying its motion to compel on the basis of lack of mutuality of obligations. In response, Hooker argues that while the arbitration agreement purports to apply to both parties, it expressly allows the parties to waive arbitration claims "where the amount in controversy does not exceed, or is not

6

expected to exceed, $25,000." The circuit court held that this provision creates a lack of mutuality of contract. We agree.

Mutuality of contract means that "an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Phillips*, 2019 Ark. 305, at 14, 586 S.W.3d at 633–34. There is no mutuality of obligation when one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Id.* Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *Id.*

At the motion hearing, Hooker argued that the provision in question reserved the Facility's "authority to hail Patricia Greeson into court to pursue its most likely action against a resident—a claim for collection, which would necessarily be monetarily due to Patricia Greeson's enrollment in Medicare," while Greeson "would have no choice but to submit her most likely claims for medical negligence, to arbitration."

On appeal, the Facility contends that if the circuit court had properly applied the standard set forth in *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 598 S.W.3d 1, it would have concluded that the agreement established mutuality of obligations on the basis of ordinary contract principles. Essentially, the Facility insists that contractual provisions benefiting only one party or that are useful to only one party do not destroy mutuality in accordance with *Jorja.*

7

In *Jorja*, the supreme court reversed a circuit court's order declining to enforce an arbitration agreement due to lack of mutuality, holding that mutuality does not require the exchange of identical rights, obligations, and benefits. *Id.* at 6, 598 S.W.3d at 6. The opinion reflected that not enforcing arbitration in that case would violate the Federal Arbitration Act. *Id.* The Facility asserts that the holding in *Jorja* is broad, clarifies the legal concept of mutuality of obligation, and "implicitly overrules prior conflicting cases like *Robinson* [*Nursing & Rehab. Ctr.*, 2019 Ark. 305, 586 S.W.3d 624,] and similar Arkansas Court of Appeals cases." Accordingly, the Facility maintains that the circuit court's stringent review of the arbitration agreement does not comport with *Jorja* and must be reversed. Furthermore, it declares that the mutuality element of contract formation was satisfied because both parties agreed to be bound; the Facility would provide long-term-care services to Greeson, and she would, in turn, pay for those services; therefore, both undertook various duties and obligations under the contract.

In *Robinson*, our supreme court addressed the question of whether an arbitration agreement containing a monetary threshold of $30,000 lacks mutuality of contract. The court rejected the nursing home's argument that the monetary threshold applied equally to the parties. *Robinson*, 2019 Ark. 305, at 16, 586 S.W.3d at 635. Specifically, the supreme court explained:

> [W]e believe that the arbitration agreements here serve to shield Robinson from defending itself in the court system against the majority of potential claims by residents, while reserving its right to utilize the court systems for its likely claims. Accordingly, these arbitration agreements are not valid or enforceable, and the circuit court correctly denied the motions to compel as to these agreements.

8

*Id.* at 16–17, 586 S.W.3d at 635. One week after our supreme court handed down its opinion in *Jorja*, this court addressed the same mutuality-of-obligations argument in an arbitration case in the nursing-home context. *Country Club Garden, LLC v. Alexander*, 2020 Ark. App. 239, 599 S.W.3d 363. As a result of the supreme court's holding in *Robinson*, this court affirmed the denial of the nursing home's motion to compel arbitration, holding that the agreement lacked mutuality of obligation, was invalid, and was unenforceable. Recognizing the decision in *Jorja*, we noted

> that the arbitration clauses at issue in *Jorja Trading* (self-help, class-action waiver, and arbitrator selection) are not the same as the provisions in question within the arbitration agreement at bar. Further, as set forth above, the supreme court's holding in *Phillips* [*Robinson*], on which we rely, is directly on point and was not overruled in *Jorja Trading.*

*Alexander*, 2020 Ark. App. 239, at 7 n.2, 599 S.W.3d at 367 n.2. The nursing home appealed this court's decision in *Alexander* to our supreme court, and the petition for review was denied.

More recently, in *Northport Health Services of Arkansas, LLC v. Chancey*, we encountered an argument—nearly identical to that of the Facility—wherein the nursing-home facility acknowledged the fact that *Jorja* did not expressly overrule *Robinson*, but nonetheless argued that the reasoning applied in those cases could not be reconciled. 2022 Ark. App. 103, 642 S.W.3d 253. Furthermore, Northport alleged that the circuit court—in denying its motion to compel—looked beyond the language of the agreements and made assumptions as to the value and likelihood of potential claims by the parties, which violates the FAA and is

preempted by the FAA. *Id.* In affirming the circuit court's order, we explained that we "cannot ignore the fact that our supreme court in *Jorja Trading* did not overrule its decision in [*Robinson*]." *Id.* at 10, 642 S.W.3d at 259. Thus, in accordance with precedent, we held that the arbitration agreement in *Northport* was invalid and unenforceable because it lacked mutuality of obligations. *Id.*

Here, as in *Northport*, the Facility is essentially asking this court to overrule the supreme court's decision in *Robinson*; however, we are powerless to do so. *See, e.g., Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009). As discussed above, this issue has been addressed at length; thus, we decline the invitation to revisit it further. *See also Waters of White Hall, LLC v. Wiegand*, 2023 Ark. App. 172; *Alexander*, 2020 Ark. App. 239, 599 S.W.3d 363; *Hickory Heights Health & Rehab, LLC v. Adams*, 2018 Ark. App. 560, 566 S.W.3d 134. Accordingly, consistent with precedent, the Facility's arbitration agreement lacks mutuality of obligation and, therefore, is not a valid agreement under Arkansas contract law. We affirm the circuit court's order denying the Facility's motion to compel arbitration.

The Facility also contends that the circuit court erred in denying its motion to compel arbitration on the basis of lack of authority. However, because the agreement lacks mutuality of obligation and is not a valid contract, we need not address the Facility's argument regarding authority.

## B. Jury Trial

Alternatively, the Facility declares that this court should reverse and remand to the circuit court with instructions to conduct a jury trial. Neither party requested that the circuit

court hold a jury trial on the motion to compel; thus, the Facility waived this argument on appeal, and we do not reach its merits. *See Pleasant v. State ex rel. McDaniel*, 2019 Ark. App. 248, 576 S.W.3d 90.

## V. *Conclusion*

For the above-stated reasons, we affirm the circuit court's order denying the Facility's motion to compel arbitration.

Affirmed.

VIRDEN and WOOD, JJ., agree.

*Kutak Roak LLP*, by: *Mark W. Dossett*, *Jeff Fletcher*, and *Caleb S. Sugg*, for appellants.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; and *Rainwater, Holt & Sexton, P.A.*, by: *Jeff R. Priebe*, for appellee.