Cite as 2024 Ark. App. 542

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-23-497

| | |
|---|---|
| ELDERCARE OF ARKANSAS, IV, INC., D/B/A STONEBRIDGE OF HEBER SPRINGS; LIERMAN FAMILY CO, XVI, LLC; AND JANET LOFTIS<br><br>APPELLANTS | **Opinion Delivered** November 6, 2024<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. 12CV-22-160] |
| V. | HONORABLE HOLLY MEYER, JUDGE |
| TERESA GORE, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF ANN DORA BERRY, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF ANN DORA BERRY<br><br>APPELLEE | |
| | AFFIRMED |

## ROBERT J. GLADWIN, Judge

This is an interlocutory appeal from an order of the Cleburne County Circuit Court denying a motion to compel arbitration. Appellants are Eldercare of Arkansas, IV, Inc. d/b/a Stonebridge of Heber Springs; Lierman Family, CO, XCI, LLC, and Janet Loftis, individually and as the administrator of Stonebridge of Heber Springs (collectively referred to herein as "appellants" or the "Facility"). Appellee is Teresa Gore ("Gore"), as special administratrix of the estate of Ann Dora Berry, deceased, and on behalf of the wrongful death beneficiaries of Ann Dora Berry. Appellants contend that the circuit court erred in denying their motion to compel arbitration, despite the existence of a valid and enforceable

arbitration agreement and Gore's failure to establish any valid defense to enforcement of the contract. We affirm.

I. *Background Facts*

On March 14, 2019, Ann Berry ("Ann") was admitted to the Facility, which is an assisted-living facility. Ann's son—Floyd Berry—signed the admission agreement and arbitration agreement as the "Responsible Party." At the time Mr. Berry signed the documents, he held Ann's durable power of attorney ("POA"). The POA granted "full power and authority to do and perform all and every act and thing whatsoever requisite, necessary, and desirable to be done, and in my name and behalf . . . ."

While at the Facility, Ann sustained numerous injuries, including multiple falls; a left wrist and left femur fracture; development and worsening of Stages II and III pressure sores; and infections, including MRSA, strep, staph, and sepsis that resulted in her death on February 7, 2021. On August 23, 2022, Gore—Ann's daughter—filed suit as the special administratrix of Ann's estate against the Facility and asserted claims for the injuries to, and the wrongful death of, Ann.

On September 27, 2022, the Facility filed a joint answer and asserted the defense of arbitration. Subsequently, on October 26, the Facility filed a motion to compel arbitration and attached the admission agreement, arbitration agreement, and Ann's durable POA. The arbitration agreement identifies the parties as "Stonebridge of Heber Springs (the 'Facility')" and Ann as the "Resident." Mr. Berry signed the signature block of the arbitration agreement under "Responsible Party." On November 9, Gore responded, arguing that no valid and enforceable arbitration agreement exists because (1) Mr. Berry—acting solely as

2

Ann's son—could not bind Ann or her estate to the arbitration agreement, and (2) the arbitration agreement lacked mutual obligations. The Facility filed a reply wherein it argued that Mr. Berry had the authority to bind Ann to the arbitration agreement pursuant to the POA and that the agreement satisfied the contractual requirement of mutual obligations.

The circuit court held a hearing on the motion via Zoom on March 23, 2023. At the conclusion of the hearing, the circuit court held that pursuant to precedent, the arbitration agreement lacks mutuality of obligations. With regard to the issue of agency, the court found that it was a "closer call" because there was no evidence presented as to when the POA was provided to the Facility. However, the court stated that the issue of whether Mr. Berry had the authority to sign the agreement was "kind of moot given the fact that [it] found a lack of mutuality." On March 27, 2023, the circuit court entered its order denying the Facility's motion to compel arbitration. The court's written findings were as follows: (1) Mr. Berry had the authority to sign the arbitration agreement on behalf of Ann and (2) that on the basis of existing case law, the arbitration agreement is not enforceable on the basis of lack of mutuality of obligation. The Facility filed its timely notice of appeal on April 26, 2023; this appeal followed.

II. *Standard of Review*

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2022). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669. Arbitration is simply a matter of contract between parties. *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App.

409, 557 S.W.3d 286. Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.* at 5, 557 S.W.3d at 290. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*

III. *Discussion*

A. Arbitration Agreements Generally

In Arkansas, arbitration "is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Diamante v. Dye*, 2013 Ark. App. 630, at 4, 430 S.W.3d 196, 199. In light of the policy favoring arbitration, any doubts and ambiguities must be resolved in favor of arbitration. *Id.* Despite an arbitration agreement being subject to the Federal Arbitration Act, this court looks to state contract law to determine if the parties' agreement is valid. *GGNSC Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645. The same rules of construction apply to arbitration agreements as apply to contracts in general. *GGNSC Holdings, LLC v. Lamb*, 2016 Ark. 101, 487 S.W.3d 348. Accordingly, this court gives effect to the parties' intent as evidenced by the arbitration agreement. *Id.*

When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties and, (2) if such an agreement exists, whether the dispute falls within its scope. *Asset Acceptance, LLC*

4

*v. Newby*, 2014 Ark. 280, 437 S.W.3d 119. The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Bank of the Ozarks v. Walker*, 2014 Ark. 223, 434 S.W.3d 357. Thus, in order to have a valid agreement to arbitrate, there must have been mutual agreement with notice as to the terms and subsequent assent. *Id.* The Facility, as the proponent of the arbitration agreement, has the burden of proving these essential elements. *See Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624.

## B. Mutuality of Contract

For its sole point on appeal, the Facility maintains that the circuit court erred in denying the motion to compel on the basis of lack of mutuality of obligations. We disagree.

Mutuality of contract means that "an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Robinson*, 2019 Ark. 305, at 14, 586 S.W.3d at 633–34. There is no mutuality of obligation when one party uses an arbitration agreement to shield itself from litigation while reserving to itself the ability to pursue relief through the court system. *Id.* Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *Id.*

Specifically, the Facility maintains that if the circuit court had properly applied the standard set forth by our supreme court in *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 598 S.W.3d 1, it would have concluded that the arbitration agreement established mutuality of obligations on the basis of ordinary contract principles. In *Jorja*, our supreme court reversed

a circuit court's order declining to enforce an arbitration agreement due to lack of mutuality, holding that mutuality does not require the exchange of identical rights, obligations, and benefits. *Id.* at 6, 598 S.W.3d at 6. Accordingly, here the Facility insists that because the circuit court delved beyond the language of the arbitration agreement—and made assumptions as to the value and likelihood of potential claims by each party—it applied a more stringent analysis and, therefore, should be reversed. However, that argument—that *Jorja* cannot be reconciled with our established appellate court precedent requiring mutuality of obligations in arbitration agreements—has been analyzed and rejected on several occasions by this court.

Under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). In *Robinson*, our supreme court addressed the question of whether an arbitration agreement containing a monetary threshold of $30,000 lacks mutuality of contract. The court rejected the nursing home's argument that the monetary threshold applied equally to the parties. *Robinson*, 2019 Ark. 305, at 16, 586 S.W.3d at 635. Specifically, the supreme court explained:

> [W]e believe that the arbitration agreements here serve to shield Robinson from defending itself in the court system against the majority of potential claims by residents, while reserving its right to utilize the court systems for its likely claims. Accordingly, these arbitration agreements are not valid or enforceable, and the circuit court correctly denied the motions to compel as to these agreements.
> *Id.* at 16–17, 586 S.W.3d at 635. One week after our supreme court handed down

its opinion in *Jorja*, this court addressed the same mutuality-of-obligations argument in an arbitration case in the nursing-home context. *Country Club Gardens, LLC v. Alexander*, 2020 Ark. App. 239, 599 S.W.3d 363. As a result of the supreme court's holding in

6

*Robinson*, this court affirmed the denial of the facility's motion to compel arbitration, holding that the agreement lacked mutuality of obligation, was invalid, and was unenforceable. *Id.* Recognizing the decision in *Jorja*, we noted

> that the arbitration clauses at issue in *Jorja Trading* (self-help, class-action waiver, and arbitrator selection) are not the same as the provisions in question within the arbitration agreement in the case at bar. Further, as set forth above, the supreme court's holding in [*Robinson*], on which we rely, is directly on point and was not overruled in *Jorja Trading.*

*Alexander*, 2020 Ark. App. 239, at 7 n.2, 599 S.W.3d at 367 n.2. The nursing-home facility appealed this court's decision in *Alexander* to our supreme court, and the petition for review was denied.

Most recently, in *Hot Springs Nursing and Rehabilitation v. Hooker*, 2024 Ark. App. 80, 684 S.W.3d 632, this court encountered an argument—nearly identical to that of the Facility—wherein the nursing-home facility acknowledged the fact that *Jorja* did not expressly overrule *Robinson* but nonetheless argued that the reasoning applied in those cases could not be reconciled. We held that "the Facility is essentially asking this court to overrule the supreme court's decision in *Robinson*; however, we are powerless to do so." *Id.* at 10, 684 S.W.3d at 638; *see also Northport Health Servs. of Ark., LLC v. Chancey*, 2022 Ark. App. 103, 642 S.W.3d 253 (rejecting the argument that *Jorja* overruled or changed our appellate courts' analysis of mutuality of obligations in nursing-home arbitration agreements). Furthermore, in *Hooker*, this court stated:

> As discussed above, this issue has been addressed at length; thus, we decline the invitation to revisit it further. *See also Waters of White Hall, LLC v. Wiegand*, 2023 Ark. App. 172; *Alexander*, 2020 Ark. App. 239, 599 S.W.3d 363; *Hickory Heights Health & Rehab, LLC v. Adams*, 2018 Ark. App. 560, 566 S.W.3d 134. Accordingly, consistent with precedent, the Facility's arbitration agreement lacks mutuality of

7

obligation and, therefore, is not a valid agreement under Arkansas contract law. We affirm the circuit court's order denying the Facility's motion to compel arbitration.

2024 Ark. App. 80, at 10, 684 S.W.3d at 639.

In addition, we are not persuaded by the Facility's attempt to distinguish this case from precedent. The Facility maintains that because it is an assisted-living facility—rather than a nursing home—it is entirely conceivable that it could have a claim against a resident that would be subject to the arbitration agreement. Specifically, the Facility explains that because its residents agree "to abide by and conform to the rules, regulations, policies, and principles" and assume liability for damage to the Facility's real and personal property, it could have a claim against a resident that is subject to the arbitration agreement. Moreover, the Facility argues that mutuality exists because the arbitration agreement provides that all parties can pursue disputes involving "payment, nonpayment or refund for services" therefore, a resident "seeking a refund for payments made in error or advance would be free to pursue such claim outside of an arbitral forum." The relevant inquiry, however, is not whether every conceivable claim the Facility might bring against a resident could be filed in a court of law but, rather, whether the arbitration agreement imposes upon each of the parties "real liability." Here, the arbitration agreement shields the Facility from any real liability to arbitrate its most likely claims; thus, precedent declares that the arbitration agreement lacks mutuality and cannot be enforced.

Because the arbitration agreement lacks mutuality of obligations, there is no valid contract to enforce; therefore, we need not address the circuit court's finding that Mr. Berry had the authority to sign the arbitration agreement on Ann's behalf.

8

IV. *Conclusion*

For the above-referenced reasons, we affirm the circuit court's order denying the Facility's motion to compel arbitration.

Affirmed.

BROWN, J., agrees.

HARRISON, C.J., concurs.

**BRANDON J. HARRISON, Chief Judge, concurring**. Arkansas law does not require "that a party's promise, say, to build a house is not enforceable unless the other party also promises to do so." *Plummer v. McSweeney*, 941 F.3d 341, 347 n.1 (Morris S. Arnold, J.) Our mutuality-of-obligation doctrine (such as it is) that requires symmetrical promises to arbitrate is in unsustainable conflict with the federal law that requires us to treat arbitration agreements like other contracts. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 249 (2017). We had a good run. But I respectfully disagree with the majority's opinion on this point.

Because the material facts in this case are indistinguishable from those in *Nursing and Rehabilitation Center at Good Shepherd, LLC v. Richardson*, 2023 Ark. App. 427, 676 S.W.3d 375, I would affirm the circuit court's decision to deny the motion to arbitrate on the ground that Eldercare did not establish that Floyd Berry signed the arbitration agreement in his capacity as Ann Berry's agent under her durable power of attorney. And I cannot help but wonder what it takes to enforce such an agreement under Arkansas law these days. That concern, however, is for another day.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; and *Rainwater, Holt & Sexton, P.A.*, by: *Jeff R. Priebe* and *Eric D. Wewers*, for appellee.